Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR PRM DEVELOPMENT, LLC,
HANS LOLLICK LAND COMPANY, LLLP, AND LITTLE
HANS LOLLIK HOLDINGS, LLP**

Julie Ann Linares
THE LINARES LAW FIRM, P.L.L.C
2199 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
(214) 523-9006 – Telephone
(214) 614-9162 – Telecopier
Email: jlinares@linareslawfirm.com

**COUNSEL FOR ECONOMETRIC MANAGEMENT, INC.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 10-35547-HDH** |
| **PRM DEVELOPMENT, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| **In re:** | § | |
| | § | **CASE NO. 10-35551-HDH** |
| **ECONOMETRIC MANAGEMENT, INC.,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| **In re:** | § | |
| | § | **CASE NO. 10-36161-HDH** |
| **HANS LOLLICK LAND COMPANY, LLLP,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 10-36159-HDH** |
| **LITTLE HANS LOLLIK HOLDINGS, LLP,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

## JOINT DISCLOSURE STATEMENT

**TO:**   **Creditors and Equity Security Holders of PRM Development, LLC ("PRM Development"), Econometric Management, Inc. ("EMI"), Hans Lollick Land Company, LLLP ("Great Hans LLLP"), and Little Hans Lollik Holdings, LLP, ("Little Hans LLP" and collectively "Debtors")**

Contained in the packet of documents which has been sent to you by Debtors are the Joint Disclosure Statement (the "Disclosure Statement"), the Joint Plan of Reorganization (the "Plan"), the Ballot for Voting on the Joint Plan of Reorganization (the "Ballot") and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof.  Please read all of these materials carefully.  Please note that in order for your vote to be counted, you must 1) include your name and address, 2) fill in, date, and sign the enclosed Ballot, and 3) return it to the respective attorney for Debtors by the date and time specified on the Ballot.

## ARTICLE I - INTRODUCTORY STATEMENT

Debtors have filed contemporaneous hereto with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") their Plan in the above-captioned cases (the "Bankruptcy Cases"). Pursuant to the terms of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") this Disclosure Statement has been approved by the Bankruptcy Court. Such approval is required by statute and will not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

Any terms not defined herein shall have the meaning set forth in the Plan.

## A.    DISCLAIMERS

ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED BY DEBTORS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. DEBTORS ARE UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE.

THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTORS OR THEIR AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED. THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY DEBTORS' COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC. NEITHER DEBTORS NOR THEIR COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.

AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN THE DEBTORS.

IF ANY IMPAIRED CLASS VOTES TO ACCEPT THE PLAN, BUT NOT ALL CLASSES ACCEPT THE PLAN, DEBTORS WILL SEEK CONFIRMATION UNDER THE CRAM DOWN PROVISION OF § 1129(B) OF THE BANKRUPTCY CODE AND HEREBY GIVES NOTICE OF INTENT TO INVOKE THE CRAM DOWN PROVISIONS OF § 1129(B) IN THAT EVENT.

**B.      BRIEF EXPLANATION OF CHAPTER 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, § 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect from a debtor any claims which arose prior to the bankruptcy filing or otherwise to interfere with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and equity security holders in the formulation of a plan of reorganization. For the first 120 days after the filing of a Chapter 11 bankruptcy petition, the debtor is the only party who may file a plan of reorganization in the bankruptcy case, which is generally referred to as "exclusivity." Once exclusivity ends, any party in interest may file a plan of reorganization. The legal requirements for court approval, called "confirmation," of a plan are discussed on Pages 4-5 of this Disclosure Statement.

**C.      THIS DISCLOSURE STATEMENT**

<u>Why You Have Received This Disclosure Statement</u>. You have received this Disclosure Statement because Debtors have proposed a Plan with the Bankruptcy Court in order to satisfy their debts and provide for a reorganization of the Debtors' businesses. The Bankruptcy Court held a hearing and approved this Disclosure Statement on _____, 2011. A copy of the Plan is enclosed with the materials that you have received. This Disclosure Statement, as required by 11 U.S.C. § 1125, is being provided to all known Creditors[1] and other parties-in-interest whose claims are impaired in connection with the solicitation and acceptance of the Plan proposed by Debtors.

<u>Purpose of this Disclosure Statement</u>. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the holders of Claims against Debtors to make an informed judgment in exercising their right either to accept or reject the Plan.

<u>Purpose of the Plan</u>. The purpose of Debtors' Plan is to provide a mechanism for the reorganization of Debtors' assets and for the payment of Debtors' Creditors. The Plan was developed by Debtors. Debtors believe that the Plan is more attractive than other alternatives, such as conversion to Chapter 7 liquidation or dismissal of the Chapter 11 Case. EACH CREDITOR IS URGED TO READ THE PLAN PRIOR TO VOTING.

---

[1] Terms used in this Disclosure Statement are defined in Article II of the Plan, and the terms should be read together with those definitions.

Bankruptcy Court Approval of this Disclosure Statement. After a hearing on notice, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of the Classes being solicited to make an informed judgment about the Plan.

Sources of Information. The information contained in this Disclosure Statement has been submitted by Debtors unless specifically stated to be from other sources. Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While Debtors have made every effort to retain the meaning of such other instruments or the portions transposed, Debtors urge that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.[2]

Only Authorized Disclosure. No representations concerning the Plan are authorized by Debtors or the Bankruptcy Court other than as set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and such representations or inducements should be reported to counsel for Debtors, who shall deliver such information to the Bankruptcy Court.

Voting on the Plan. **YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT.** In order to vote on the Plan, a creditor or interest holder must have filed a proof of claim or interest on or before the Bar Date, unless scheduled by Debtors as not disputed, liquidated or contingent. Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim and, absent objection, such claim is deemed allowed. A creditor or interest holder may vote to accept or reject the Plan by filling out and mailing to counsel for Debtors the Ballot that has been provided in this package of information.

In order for the Plan to be accepted by a class of creditors, more than one half in number and at least two-thirds in amount of such class of Claims must vote to accept the Plan. Only those claim holders that actually vote are considered in the calculations. In order for the Plan to be accepted by interest holders, at least two-thirds in amount of interests must vote to accept the plan. Again, only voting interest holders are considered in the calculation. You are, therefore, urged to fill in, date, sign and promptly mail and/or fax the enclosed Ballot, which has been furnished to you, to counsel for Debtors as follows:

**PRM DEVELOPMENT, LLC, HANS LOLLICK LAND COMPANY, LLLP AND LITTLE HANS LOLLIK HOLDINGS, LLP**
**Gerrit M. Pronske**
**Pronske & Patel, P.C.**
**2200 Ross Avenue, Suite 5350**
**Dallas, TX 75201**
**Fax: (214) 658-6509**
**Email: smeiners@pronskepatel.com**

---

[2] Information contained herein related to the foreclosure of the Wikil Property by Winnfield (terms defined below) is based on information and belief but may require supplementation or correction as additional information becomes available.

**DEBTORS' JOINT DISCLOSURE STATEMENT – Page 5 of 26**

**ECONOMETRIC MANAGEMENT, INC.**
**Julie Ann Linares**
**The Linares Law Firm, P.L.L.C**
**2199 Turtle Creek Blvd., Suite 300**
**Dallas, TX 75219**
**Fax: (214) 614-9162**
**Email: jlinares@linareslawfirm.com**

**Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder.**

The Bankruptcy Court has fixed _____, 2011, as the last date by which Ballots must be served on counsel for Debtors. Except to the extent allowed by the Bankruptcy Court, Ballots that are received after such time will not be counted. Ballots of holders of impaired Claims received pursuant to this solicitation and which are signed but are not expressly voted for acceptance or rejection of the Plan will be counted as Ballots for accepting the Plan. A Ballot accepting the Plan may not be revoked, except by a Final Order of the Bankruptcy Court.

## ARTICLE II – BANKRUPTCY SUMMARY

### A.    HISTORY OF THE DEBTORS

PRM Development is a Delaware limited liability company formed in January 2001 for the purpose of holding interests in Great Hans LLLP and Little Hans LLP, which directly own two islands located in the United States Virgin Islands ("USVI") approximately one and a half miles from the north coast of St. Thomas. PRM Realty Group, LLC, a Ch. 11 debtor in possession before this Court, is the 100% owner of PRM Development. Peter R. Morris, also a Ch. 11 debtor in possession, is the president of PRM Realty Group, LLC.

EMI is a Texas corporation formed for the purpose of directly and/or indirectly managing real property. Bruce R. Tizes and Richard Blumberg have co-equal control of EMI. When EMI filed its Voluntary Petition for protection under Chapter 11 of the Bankruptcy Code (see below), Mr. Tizes owned 95% of the interests in EMI, while Richard Blumberg owned 5% of the interests. By agreement between Mr. Tizes and Mr. Blumberg, the percentage ownership interests of Mr. Tizes and Mr. Blumberg in EMI have changed and may change during the term of the Plan.

Great Hans LLLP is a USVI limited liability limited partnership formed in October 2002 for the purpose of holding an undeveloped 510-acre island in the USVI known as Great Hans Lollick ("Great Hans Property"). PRM Development and EMI are the general partners and each hold a 0.1% interest in Great Hans LLLP. Additionally, PRM Development (33.230%) and EMI (66.570%) are the limited partners of Great Hans LLLP.

Little Hans LLP is a Delaware limited liability partnership formed in April 2002 for the purpose of holding an undeveloped 100-acre island in the USVI known as Little Hans Lollik

("Little Hans Property"). PRM Development (33.33%) and EMI (66.67%) are the partners and managers of Little Hans LLP.

## B. EVENTS LEADING UP BANKRUPTCY

On or about October 28, 2002, Little Hans LLP acquired title to the Little Hans Property from John M. Ballard. On or about September 17, 2004, Little Hans LLP entered into various loan documents with the predecessor-in-interest to Liberty in the principal amount of $1,650,000. The loan documents were first modified and extended on or about September 30, 2007, October 31, 2007, and December 1, 2008 ("Little Hans Loan"). The October 31, 2007 modification increased the principal amount of the Little Hans Loan to $2,310,000.

On or about August 26, 2004, Great Hans LLLP acquired title to the Great Hans Property from Tamarind Resort Corporation. To finance the acquisition of the Great Hans Property, Great Hans LLLP entered into various loan documents with the predecessor-in-interest to Liberty Bankers Life Insurance Company ("Liberty"), American Reserve Life Insurance Company, on or about September 17, 2004 ("Great Hans Loan"). The principal amount of the loan was $3,750,000. The loan documents were modified and extended on or about September 30, 2007, October 31, 2007, and December 1, 2008. The October 31, 2007 modification increased the principal amount of the loan to $4,690,000.

EMI owned a parcel of residential property located at 142 Wikil Place, Palm Desert, California ("Wikil Property"). The Wikil Property consists of a luxury home on a developed tract of land in a private subdivision. To finance the acquisition of the Wikil Property, the predecessor-in-interest to EMI, Bruce Tizes, entered into various loan documents with Winnfield Life Insurance Company ("Winnfield") on or about January 25, 2008. Winnfield received a first mortgage on the Wikil Property as collateral for the loan in the approximate principal amount of $975,000.

The Wikil Property was encumbered by a second lien on or about January 29, 2008, that secures a promissory note and business agreement by and between Bruce Tizes to Robert Santarpia ("Santarpia") in the principal amount of $450,000, together with incremental contributions and/or costs.

The Wikil Property was encumbered by a third lien on or about May 7, 2009, that secures a promissory note from Bruce Tizes to Andrea and David Feinberg ("Feinbergs") in the principal amount of $450,000.

On April 21, 2010, Winnfield recorded a Notice of Default regarding the loan secured by the Wikil Property. EMI contests the Notice of Default and believes the foreclosure process conducted by Winnfield to be wrongful.

On January 19, 2010, Liberty filed a complaint against Debtors in the U.S. District Court of the Virgin Islands, Division of St. Thomas and St. John, seeking to foreclose on the Great Hans Property and Little Hans Property. On July 19, 2010, Liberty voluntarily dismissed the complaint.

On July 22, 2010, Liberty sent Debtors Notice of Disposition of Collateral purporting to notice the sale of the partnership interests in Great Hans LLLP and Little Hans LLP on August 9, 2010 at the Dallas, Texas, office of its attorneys.  The partnership interests were pledged as collateral for the Great Hans Loan and the Little Hans Loan by PRM Development and the predecessors of EMI.

On August 6, 2010, PRM Development and EMI filed their Voluntary Petitions for protection under Chapter 11 of the Bankruptcy Code in order to prevent the sale of PRM Development's and EMI's partnership interests in Great Hans LLLP and Little Hans LLP and in order to use the tools and procedures provided in bankruptcy in order to reorganize its business.

On September 3, 2010, Great Hans LLLP and Little Hans LLP filed their Voluntary Petitions for protection under Chapter 11 of the Bankruptcy Code in order to more effectively reorganize the combined Great Hans LLLP and Little Hans LLP enterprise and in order to use the tools and procedures provided in bankruptcy in order to reorganize its business.

On December 1, 2010, Debtors believe that the Wikil property reverted to Winnfield pursuant to a non-judicial foreclosure in the State of California that EMI believes was conducted wrongfully.

## C.      ASSETS AND LIABILITIES AT THE TIME OF THE FILING

Attached hereto as **Exhibits A, B, C and D,** are Summaries of PRM Development's, EMI's, Great Hans LLLP's, and Little Hans LLP's respective Schedules, reflecting Debtors' estimation of their assets and liabilities as of the respective Petition Dates.  A complete copy of Debtors' Schedules is available upon written request submitted to legal counsel for PRM Development, Great Hans LLLP, and Little Hans LLP via either facsimile at (214) 658-6509 or via email at smeiners@pronskepatel.com and EMI via either facsimile at (214) 614-9162 or via email at jlinares@linareslawfirm.com.

## D.      SIGNIFICANT EVENTS IN CHAPTER 11

Initial § 341 Meeting of Creditors.  On September 9, 2010, the initial meetings of creditors for PRM Development and EMI were held and concluded pursuant to 11 U.S.C. § 341. On October 13, 2010, the initial meetings of creditors for Great Hans LLLP and Little Hans LLP were held and concluded pursuant to 11 U.S.C. § 341.

Employment of Legal Counsel.  On September 22, 2010, the Court entered its order approving PRM Development's application to employ the law firm of Pronske & Patel, P.C. as counsel for PRM Development. On October 27, 2010, the Court entered its order approving EMI's application to employ the Linares Law Firm, P.L.L.C as counsel for EMI. On November 22, 2010, the Court entered its order approving Great Hans LLLP's application to employ the law firm of Pronske & Patel, P.C. as counsel for Great Hans LLLP. On November 29, 2010, the Court entered its order approving Little Hans LLP's application to employ the law firm of Pronske & Patel, P.C. as counsel for Little Hans LLP.

Post-Petition Operations of Debtor. PRM Development's, EMI's, Great Hans LLLP's and Little Hans LLP's Monthly Operating Reports reflecting post-petition operations through October 31, 2010 are attached hereto as **Exhibits E, F, G, H**, respectively, and incorporated by reference herein.

## ARTICLE III - SUMMARY OF THE PLAN

### A.    OVERVIEW OF THE PLAN

THE FOLLOWING DISCUSSION IS A GENERAL OVERVIEW OF THE PLAN ONLY. IT IS NOT INTENDED TO MODIFY THE TERMS OF THE PLAN IN ANY WAY. THE PLAN IS ENCLOSED WITH THIS DISCLOSURE STATEMENT. CREDITORS ARE URGED TO READ THE PLAN IN ITS ENTIRETY IN DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN.

The Plan provides for a reorganization of all liabilities owed by Debtors, as described herein.

### B.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan classifies and treats various classes of creditors of the Debtors' Estates. The following is a summary of classification and treatment of creditors' claims under the Plan:

For the purpose of satisfaction of all Claims against and Interests in Debtors, the Claims and Equity Interests are divided into the following classes:

Class 1: Administrative Claims

Class 1 Administrative Claims consist of any claim for payment of any cost or expense of administration of the Bankruptcy Case entitled to priority in accordance with §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates and operating their businesses from and after the Petition Date to and including the Confirmation Date and all allowances of compensation and reimbursement approved by the Bankruptcy Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtors' Estates under the Bankruptcy Code. Except to the extent that the holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full within ten (10) days of the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash within ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court. For purposes of payment of Administrative Claims, any person desiring to have their Claim paid as an Administrative Claim under the Plan, must file an application for allowance of that Administrative Claim on or before thirty (30) days after the Confirmation Date or such person shall be barred from asserting an Administrative Claim.

Class 2: Priority Tax Claims

Class 2 Priority Tax Claims consist of any claim that is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code. Priority Tax Claims shall be paid by the Reorganized Debtors, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on October 1, January 1, April 1 and July 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims, as provided in § 1129(a)(9)(C) of the Bankruptcy Code commencing after the first full quarter following the Effective Date.

Class 3: Secured Claims of Liberty Bankers Life Insurance Company

The Class 3 Claims of Liberty shall be treated as fully Secured Claims in amounts to be determined by the Bankruptcy Court pursuant to 11 U.S.C. § 506(b) at the Confirmation Hearing. The Class 3 Claims of Liberty shall be treated as follows:

Class 3A: This Class consists of the Secured Claim of Liberty in the principal amount of $4,690,000 which is secured by a first lien on the Great Hans Property. Allowed Secured Claims in Class 3A will receive the following treatment:

(a)    Assumption of Great Hans Loan. Great Hans LLLP shall assume the Great Hans Loan with no assumption fee, subject to the following modifications: 1) the maturity date shall be extended to August 1, 2012 ("Initial Term"); 2) the interest rate shall be reduced to 7.5%; 3) interest only payments will be made monthly by the Debtors; and 4) all amounts owed will be deaccelerated.

(b)    Extension of Great Hans Loan. In the event that the Little Hans Property is sold during the Initial Term of the Great Hans Loan, the term of the Great Hans Loan will be extended until February 1, 2014 on the same terms as during the Initial Term. Furthermore, Great Hans LLLP may extend the term of the Great Hans Loan for a period of twelve (12) months in exchange for payment of a 1% exit fee at maturity of the Great Hans Loan, provided that the Great Hans Loan is not in default, and notice is sent in writing to Liberty within 120 days of the maturity of the Initial Term.

(c)    Defaults. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

(d)    Default Interest/Penalties/Charges. Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to Liberty in connection with Great Hans LLLP's assumption of the Great Hans Loan, or the treatment provided under this Plan for Allowed Class 3A Claims.

(e)     Collateral.  Liberty shall retain all of its liens and security interests in the Debtors' assets, including the Great Hans Property, granted to it pursuant to the Great Hans Loan, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date.

(f)     Waivers/Consents.  Liberty shall be deemed to consent to and approve the transactions and changes to the Debtors contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

Class 3B:  This Class consists of the Secured Claim of Liberty in the principal amount of $2,310,000 which is secured by a first lien on the Little Hans Property.  Allowed Secured Claims in Class 3B will receive the following treatment:

(a)     Assumption of Little Hans Loan.  Little Hans LLP shall assume the Little Hans Loan with no assumption fee, subject to the following modifications:  1) the maturity date shall be extended to August 1, 2012; 2) the interest rate shall be reduced to 7.5%; 3) interest only payments will be made monthly by the Debtors; and 4) all amounts owed will be deaccelerated.

(b)     Application of the Little Hans Property Proceeds.  In the event the Little Hans Property is sold, the Little Hans Loan will be paid in full and the remaining proceeds will be distributed, first, to the Allowed Class 7D General Unsecured Claims, and, second, to Little Hans LLP.

(c)     Extension of Little Hans Loan.     Furthermore, Little Hans LLP may extend the term of the Little Hans Loan for a period of twelve (12) months in exchange for payment of a 1% exit fee at maturity of the Little Hans Loan, provided that the Little Hans Loan is not in default, and notice is sent in writing to Liberty within 120 days of the maturity of the Initial Term.

(d)     Defaults.  All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

(e)     Default Interest/Penalties/Charges.  Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to Liberty in connection with Little Hans LLP's assumption of the Little Hans Loan, or the treatment provided under this Plan for Allowed Class 3B Claims.

(f)     Collateral.  Liberty shall retain all of its liens and security interests in the Debtors' assets, including the Little Hans Property, granted to it pursuant to the Little Hans Loan, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date.

(g) Waivers/Consents. Liberty shall be deemed to consent to and approve the transactions and changes to the Debtors contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

Class 4: Secured Claim of Winnfield Life Insurance Company

This Class consists of the previously Secured Claim of Winnfield in the stated principal amount of $975,000 which was secured by a first lien on the Wikil Property. Allowed Secured Claims in Class 4 will receive the following treatment: On December 1, 2010, the Wikil Property reverted to Winnfield pursuant to a non-judicial foreclosure in the State of California in full satisfaction and release of all obligors of the Winnfield loan, promissory note and mortgage.

Class 5: Secured Claim of Robert Santarpia

This Class consists of the Secured Claim of Santarpia in the approximate amount of $450,000 which is secured by a second lien on Wikil Property. Allowed Secured Claims in Class 6 will receive the following treatment: Any remaining indebtedness of Santarpia, following the disposition of the Wikil Property by Winnfield and distribution of excess proceeds pursuant to lien priority, shall be treated as a Class 7B General Unsecured Claim.

Class 6: Secured Claim of Andrea and David Feinberg

This Class consists of the Secured Claim of the Feinbergs in the approximate amount of $450,000 which is secured by a third lien on Wikil Property. Allowed Secured Claims in Class 5 will receive the following treatment: Any remaining indebtedness of the Feinbergs, following the disposition of the Wikil Property by Winnfield and distribution of excess proceeds pursuant to lien priority, shall be treated as a Class 7B General Unsecured Claim.

Class 7: General Unsecured Claims

Class 7 Allowed General Unsecured Claims consist of all other Allowed Claims against Debtors not placed in any other Class.

Class 7A: PRM Development General Unsecured Claims. This Class consists of any Allowed General Unsecured Claims against PRM Development. Creditors holding Allowed Class 7A General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized PRM Development up to the Allowed amount of their Claim as a result of the sale of the Little Hans Property and the Great Hans Property.

Class 7B: EMI General Unsecured Claims. This Class consists of any Allowed General Unsecured Claims against EMI. Creditors holding Allowed Class 7B General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized EMI up to the Allowed amount of their Claim as a result of the sale of the Little Hans Property and the Great Hans Property.

Class 7C: Great Hans LLLP General Unsecured Claims. This Class consists of any Allowed General Unsecured Claims against Great Hans LLLP. Creditors holding Allowed Class 7C General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized Great Hans LLLP up to the Allowed amount of their Claim as a result of the sale of the Great Hans Property.

Class 7D: Little Hans LLP General Unsecured Claims. This Class consists of any Allowed General Unsecured Claims against PRM Development. Creditors holding Allowed Class 7D General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized Little Hans LLP up to the Allowed amount of their Claim as a result of the sale of the Little Hans Property.

Class 8: Equity Interests

Class 8 Equity Interest Holders, comprised of member interest owners in PRM Development, EMI, Great Hans LLLP and Little Hans LLP, shall retain their interests in PRM Development, EMI, Great Hans LLLP and Little Hans LLP.

## C.      IMPLEMENTATION OF THE PLAN

Debtors shall operate their businesses following the Effective Date and shall dedicate sufficient revenues to fund all obligations contained herein.

### 1.      PRM Development

Sale of the Great Hans Property and Little Hans Property. The Reorganized PRM Development shall assist in the sale of the Great Hans Property and Little Hans Property.

Reorganized Debtor. Upon the Confirmation Date of the Plan, the Reorganized PRM Development shall be the survivor of PRM Development.

New Capital Contributions. If necessary, PRM Development will raise capital contributions from its current members, affiliates and third-party sources sufficient to cover the payment of all payments to be made pursuant to the Plan for Administrative Claims.

Cramdown. If any impaired class votes to accept the plan, but not all classes accept the plan, PRM Development will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

### 2.      EMI

Sale of the Great Hans Property and Little Hans Property. The Reorganized EMI shall assist in the sale of the Great Hans Property and Little Hans Property.

Sale of 11-59 Estate Peterborg. The parcel of real property located at 11-59 Estate of Peterborg, No. 12 Great Northside Quarter, St. Thomas, USVI ("11-59 Property"), was pledged

as collateral for the Great Hans Loan and Little Hans Loan. Reardon Capital, LLC, an affiliate of EMI and owner of the 11-59 Property, may list the 11-59 Property for sale within (15) days of the Effective Date provided that Liberty agrees that all net proceeds from the sale of the 11-59 Property will be placed in an escrow account and serve as an interest reserve to be used solely by Debtors' to pay interest on the Great Hans Loan and Little Hans Loan.

Reorganized Debtor. Upon the Confirmation Date of the Plan, the Reorganized EMI shall be the survivor of EMI.

New Capital Contributions. If necessary, EMI will raise capital contributions from its current members, affiliates and third-party sources sufficient to cover all payments to be made pursuant to the Plan for Administrative Claims.

Cramdown. If any impaired class votes to accept the plan, but not all classes accept the plan, EMI will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

### 3.    Great Hans LLLP

Sale of Great Hans Property. The Reorganized Debtors will offer the Great Hans Property, including the equity ownership of Great Hans LLP, for sale with a licensed broker at a price of $39,000,000 beginning within fifteen (15) days following the Effective Date. The Great Hans Property will have a sale closing deadline that will be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement ("Great Hans Closing Deadline"). The Great Hans Closing Deadline shall be the deadline for the closing of a sale of the Great Hans Property, after which date the Great Hans Property will be put to auction at time and place to be agreed by the Debtors and Liberty. At such auction Liberty has the right to make a credit bid for the Great Hans Property.

Reorganized Debtor. Upon the Confirmation Date of the Plan, the Reorganized Great Hans LLLP shall be the survivor of Great Hans LLLP.

New Capital Contributions. If necessary, Great Hans LLLP will raise capital contributions from its current partners, affiliates and third-party sources sufficient to cover all payments to be made pursuant to the Plan for Administrative Claims.

Cramdown. If any impaired class votes to accept the plan, but not all classes accept the plan, Great Hans LLLP will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

### 4.    Little Hans LLP

Sale of Little Hans Property. The Reorganized Debtors will offer the Little Hans Property, including the equity ownership of Little Hans LLP, for sale with a licensed broker at a price of $7,500,000 beginning within fifteen (15) days following the Effective Date. The Little Hans Property will have a sale closing deadline that will be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement ("Little Hans Closing Deadline"). The

Little Hans Closing Deadline shall be the deadline for the closing of a sale of the Little Hans Property, after which date the Little Hans Property will be put to auction at time and place to be agreed by the Debtors and Liberty. At such auction Liberty has the right to make a credit bid for the Little Hans Property.

Reorganized Debtor.  Upon the Confirmation Date of the Plan, the Reorganized Little Hans LLP shall be the survivor of Little Hans LLP.

New Capital Contributions.  If necessary, Little Hans LLP will raise capital contributions from its current partners, affiliates and third-party sources sufficient to cover the payment of all payments to be made pursuant to the Plan for Administrative Claims.

Cramdown.  If any impaired class votes to accept the plan, but not all classes accept the plan, Little Hans LLP will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

## D.    DISPOSITION OF CAUSES OF ACTION

Debtors have not yet concluded their analysis of existing claims and Causes of Action and expressly reserve the right to continue such analysis.  All Claims and Causes of Action owned by Debtors, Causes of Action that could have been brought by a Creditor on behalf of Debtors, and all Causes of Action created by the Bankruptcy Code not expressly waived or released under the Plan may be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code.  The Reorganized Debtors shall have the exclusive right to settle or compromise all such Causes of Action subject to Bankruptcy Court approval. Bankruptcy Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

## E.    EXECUTORY CONTRACTS AND LEASES

General Assumption and Assignment.  Debtors anticipate, but do not guarantee, that all unexpired executory contracts will be assumed at Confirmation.  All assumed contracts will be paid in the ordinary course of business on a going forward basis after Confirmation. All executory contracts and unexpired leases of Debtors (including, but not limited to, those listed on the Debtors' Schedules) which are not expressly rejected on or before ninety (90) days after the Confirmation Date or not otherwise specifically treated in the Plan or in the Confirmation Order shall be deemed to have been assumed by Debtors on the Confirmation Date. Debtors reserve the right to file an exhibit with the Bankruptcy Court prior to the Confirmation Date rejecting any executory contract or lease.

Cure of Assumed Executory Contracts and Unexpired Leases.  To the extent necessary, Debtors shall cure all defaults existing under any assumed executory contract or unexpired lease by paying the amount, if any, claimed by any party to such executory contract or unexpired lease as set forth in a proof of claim, which shall be filed with the Bankruptcy Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, Debtors may pay such amount as may be agreed upon between Debtors and any

party to such executory contract or unexpired lease, provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date.

Debtors shall have the right to file within sixty (60) days of the filing of an Assumption Cure Proof of Claim an objection in writing to the amount set forth in the Assumption Cure Proof of Claim and the Bankruptcy Court shall determine the amount actually due and owing in respect of the defaults.

Payment of such Claims shall be made by the Reorganized Debtors on the later of: (1) ten (10) Business Days after the expiration of the sixty day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Bankruptcy Court allowing such Claim becomes a Final Order.

## F.      RESOLUTION OF DISPUTED CLAIMS

Only Allowed Claims will be paid by Debtors according to the Plan.  An Allowed Claim is any claim against Debtors for which a proof of claim was timely and properly filed or is deemed to have been timely and properly filed because the Debtors have or hereafter do list such Claim on their schedules as liquidated and not disputed or contingent.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Reorganized Debtors may file with the Bankruptcy Court objections to Claims and Interests.

If the Reorganized Debtors file an objection to a proof of claim ("Undetermined Claim"), then an Allowed Claim shall be the amount of the claim allowed by order of the Bankruptcy Court.  Thereafter, only upon entry of an order determining the amount of the Allowed Claim and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by the Plan and the terms of any Final Order of the Bankruptcy Court with respect to such Allowed Claim.  In the event that Debtors make any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held by Debtors and/or Reorganized Debtors with respect to such claim.

## <u>ARTICLE IV - CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN</u>

<u>Conditions to Confirmation</u>.  Confirmation of the Plan cannot occur unless each of the following conditions precedent has occurred:

1.  The Bankruptcy Court shall have approved the Disclosure Statement; and
2.  The Confirmation Order is entered by the Bankruptcy Court.

## ARTICLE V - MODIFICATION OF THE PLAN

Section 1127(a) of the Bankruptcy Code permits Debtors to amend or modify a plan at any time prior to confirmation. Post-confirmation modifications of a plan are allowed under § 1127(b) of the Bankruptcy Code, if the proposed modification is offered before a plan has been substantially consummated or pursuant to an article of the confirmed plan authorizing the intended modification. Debtors reserve the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event Debtors propose to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity security interest holder who has previously accepted the Plan. If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, Debtors intend to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

## ARTICLE VI - CONSIDERATIONS IN VOTING ON THE PLAN

### A.     ALTERNATIVES TO THE PLAN

Although the Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful. Debtors believe the proposed Plan to be in the best interests of creditors and Debtors, and do not favor any alternative to the proposed Plan. In arriving at that conclusion, Debtors assess the alternatives as follows:

Chapter 7 Liquidation Analysis. Debtors could convert the case to Chapter 7 and allow a bankruptcy trustee to be appointed to liquidate and distribute assets. In the event that the Bankruptcy Court does not confirm a plan of reorganization in this case, conversion to Chapter 7 will ultimately result. Debtors believe this alternative to be unsatisfactory for the reasons stated in Article VII. B., below, and that Unsecured Creditors would receive no money or significantly less money than proposed in the Plan in the event that the Debtors' assets are liquidated under Chapter 7 of the Bankruptcy Code.

Dismissal of the Case. Dismissal of the Bankruptcy Case would most likely lead to the same unsatisfactory result as Chapter 7 liquidation.

Debtors have attempted to set forth alternatives to the proposed Plan. However, Debtors must caution creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will

take if the Plan fails to be accepted. If you believe one of the alternatives referred to is preferable to the Plan and you wish to urge it upon the Bankruptcy Court, you should consult counsel.

## B.    LIQUIDATION ANALYSIS

The likely result of a conversion of the Bankruptcy Case to Chapter 7 liquidation would be a lifting of the automatic stay of 11 U.S.C. § 362(a) to permit foreclosure by Liberty as to the Great Hans Property and Little Hans Property. In the event of a liquidation of the Debtors' assets in a Chapter 7 bankruptcy case, Liberty would foreclose on the Great Hans Property and Little Hans Property, leaving very little proceeds available for the repayment of any other creditors. Furthermore, there is no market for the Debtors' equity interests and a liquidation sale of those assets would net very little proceeds, if any. Liquidation would result in the Debtors being stripped of their assets and thus they would have no source of income. In the absence of any adversary proceedings, there would be no other source of funds, which would lead to smaller distributions to claim classes than would the Plan. When compared to foreclosure of the property and liquidation of the Debtors, the Plan is clearly superior a Chapter 7 Liquidation Scenario.

## C.    SPECIFIC CONSIDERATIONS IN VOTING

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

While the Plan provides for certain payments at confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is allowed. A Claim will be allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Bankruptcy Court at a regular, evidentiary hearing and allowed in full or in part or disallowed. While Debtors bear the principal responsibility for Claim objections, any interested party, including creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

## D.    DISCLOSURES REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires disclosure of certain facts:

1)    There are no payments made or promises of the kind specified in § 1129(a)(4) of the Bankruptcy Code which have not been disclosed to the Bankruptcy Court.

2)    Counsel to Debtors have advised Debtors that Debtors will require legal services in connection with this case after confirmation which will require reimbursement. PRM Development, Great Hans LLLP and Little Hans LLP may continue to use Pronske & Patel, P.C.

as counsel after confirmation and EMI may continue to use The Linares Law Firm, P.L.L.C. as counsel after confirmation.

**E.    DESCRIPTION OF MANAGEMENT AND CONTROL PERSONS OF DEBTOR**

There will be no changes to the management and control persons of PRM Development, EMI, Great Hans LLLP or Little Hans LLP, as of the date of filing of the Plan, as a result of the Plan.

**ARTICLE VII - PROVISIONS GOVERNING DISTRIBUTION**

Claims.  Claims are defined in the Plan.  The Plan is intended to deal with all Claims against the Debtors' estates of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Bankruptcy Court pursuant to § 502(a) of the Bankruptcy Code; however, only those Claims Allowed pursuant to § 502(a) of the Bankruptcy Code will be entitled and receive payment under the Plan.

Compliance with Plan.  Any Person, including a Creditor, which has not, within the time provided in the Plan, performed any act required in the Plan or in the Confirmation Order, shall not be entitled to participate in any distribution under the Plan.

Provisions Covering Distributions.  All payments required by the Plan shall be made by Reorganized Debtors, their successor, assign or designee.  Payments to be made in cash pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, such mode of payment to be at the sole discretion of Reorganized Debtors.

Distributions and deliveries to holders of an Allowed Claim shall be made to the holder at the address set forth on the latest-filed proof of claim filed by such holder or at the address listed on Debtors' Schedules of such holder if no proof of claim is filed.  If any holder's distribution is returned as undeliverable, Reorganized Debtors shall hold the distribution until notified of such holder's new address or the first anniversary of the Effective Date occurs, at which time the undelivered distribution shall revert and become the property of Reorganized Debtors and the Claim shall be discharged and forever barred.

Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for re-issuance shall be made directly to Reorganized Debtors at the Notice Address(es) listed herein in Article XI by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of issuance of such check.  After such date, all Claims in respect of such checks shall be discharged and forever barred.

**ARTICLE VIII - RETENTION OF JURISDICTION**

Purposes.  Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction in the following matters after confirmation of the Plan:

i.    to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with § 503(b) of the Bankruptcy Code or the Plan;

iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which Debtors are a party or with respect to which they may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv.    to hear and determine any and all actions initiated by Debtors and/or Reorganized Debtors, whether by motion, complaint or otherwise;

v.    to determine any and all applications, motions, adversary proceedings and contested matters pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.    to modify the Plan, the Disclosure Statement or any document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, the Plan, the Disclosure Statement or any document created in connection with the Plan, in such manner as may be necessary to carry out the purposes and effects of the Plan to the extent authorized by the Bankruptcy Code;

vii.    to ensure that the distribution is accomplished in accordance with the provisions of the Plan;

viii.    to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

ix.    to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of the Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate

orders to protect Debtors from creditor actions;

    x.   to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code and/or applicable bankruptcy law;

   xi.   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

   xii.   to determine such other matters as may arise in connection with the Plan, this Disclosure Statement or the Confirmation Order;

   xiii.   to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

   xiv.   to determine all issues relating to the Claims of any taxing authorities, state or federal;

   xv.   to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

   xvi.   to enter a Final Order and final decree closing the Chapter 11 Case.

Exclusive Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of the Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

Abstention. If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article VIII, Article VIII of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Closing of Case.  The Reorganized Debtors shall file an application for final decree and to close the Bankruptcy Case and promptly set a hearing no later than twelve (12) months after the Effective Date, or show cause to the Bankruptcy Court within such period why the Bankruptcy Court should not enter a final decree.  Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Chapter 11 Case, and jurisdiction shall be retained over such proceeding.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

Certain Rights Unaffected. Except as otherwise provided in the Plan, any rights or obligations which the Debtors' creditors may have amongst them as to their respective claims or the relative priority or subordination thereof are unaffected.

Binding Effect. As of the Effective Date, the Plan shall be binding upon and inure to the benefit of Debtors, Reorganized Debtors, the holders of the Claims, and their respective successors and assigns.

Discharge of Claims. Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against Debtors or any of their assets or properties to the extent permitted by § 1141 of the Bankruptcy Code. Upon the Effective Date, all existing Claims against Debtors shall be deemed to be discharged and all holders of Claims shall be precluded from asserting against the Debtors' assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

Discharge of Debtors. Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against Debtors or any of their assets or properties. Upon the Effective Date, Debtors shall be deemed discharged and released to the extent permitted by § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of Debtors. Pursuant to § 524 of the Bankruptcy Code, such discharge shall void any judgment against Debtors at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against Debtors or the property of Debtors, to the extent it relates to a claim discharged.

Exculpations. Debtors' professionals shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

Injunctive Relief. Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to § 105 of the Bankruptcy Code from taking any action to correct or enforce any Claim directly or indirectly against the Debtors' assets or properties in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

_Temporary Injunction_. Upon Confirmation of the Plan, all creditors of the Debtors, save and except for the Internal Revenue Service, having an Allowed Claim herein shall be temporarily enjoined, pursuant to § 105 of the Bankruptcy Code, from proceeding against any member, affiliate, guarantor, pledgor or other responsible person related to the Debtors and the Debtors' Bankruptcy Estates, including, but not limited to, Bruce Tizes, Reardon Capital, LLC, Richard P. Blumberg, and Roark Architecture, L.P., for the collection of all or any portion of their Allowed Claim or guarantee thereof. Said injunction shall remain in effect only for so long as the Debtors comply with the applicable terms and obligations of the Plan. Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtors of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party. By this section creditors are temporarily enjoined hereunder from proceeding against the Debtors or their affiliates and any such claims or cause of action shall be abated in lieu of collection of any amounts paid or to be paid by the Debtors under the Plan as well so as to not inhibit or impair ability to perform obligations under the Plan as members or affiliates of the Debtors to make the necessary payments due to the Debtors under the Plan.

_Notices_. All notices, requests or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

**Debtor:**

PRM Development, LLC

**Debtor's Counsel:**

Gerrit M. Pronske
Pronske & Patel, P.C.
2200 Ross Avenue, Suite 5350
Dallas, TX 75201
Tel: (214) 658.6500
Fax: (214) 658.6509

**Debtor:**

Econometric Management, Inc.

**Debtor's Counsel:**

Julie Ann Linares
The Linares Law Firm, P.L.L.C
2199 Turtle Creek Blvd., Suite 300
Dallas, TX 75219

Tel: (214) 523-9006
Fax: (214) 614-9162

**Debtor:**

Hans Lollick Land Company, LLLP

**Debtor's Counsel:**

Gerrit M. Pronske
Pronske & Patel, P.C.
2200 Ross Avenue, Suite 5350
Dallas, TX 75201
Tel: (214) 658.6500
Fax: (214) 658.6509

**Debtor:**

Little Hans Lollik Holdings, LLP

**Debtor's Counsel:**

Gerrit M. Pronske
Pronske & Patel, P.C.
2200 Ross Avenue, Suite 5350
Dallas, TX 75201
Tel: (214) 658.6500
Fax: (214) 658.6509

All notices and request to Holders of Claims and Interests shall be sent to them at the address listed on the last-filed proof of claim and if no proof of claim is filed, at the address listed in Debtors' Schedules.

## ARTICLE X - CONCLUSION

Debtors respectfully submit that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest of creditors" and "feasibility" requirements and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan. Debtors believe that the Plan "is fair and equitable" and "does not discriminate unfairly." Additionally, Debtors believe that the Plan has been proposed in good faith.

Debtors respectfully request that this Disclosure Statement be approved for circulation to the creditors of Debtors and that they be permitted to solicit votes for acceptance of the Plan.

Dated:  December 2, 2010.

**PRM Development, LLC**

By:    PRM Management of Illinois, Inc.,
       Its Manager

       By:    */s/ Peter R. Morris*
              Peter R. Morris, President

**Econometrics Management, Inc.**

By:    */s/ Bruce R. Tizes*
       Bruce R. Tizes, President

**Hans Lollick Land Company, LLLP**

By:    PRM Development, LLC,
       Its General Partner

       By:    PRM Management of Illinois,
              Inc., Its Manager

              By:    */s/ Peter R. Morris*
                     Peter R. Morris,
                     President

By:    Econometrics Management, Inc.,
       Its General Partner

       By:    */s/ Bruce R. Tizes*
              Bruce R. Tizes, President

**Little Hans Lollick Holdings, LLP**

By:    PRM Development, LLC,
       Its Partner

       By:    PRM Management of Illinois,
              Inc., Its Manager

              By:    */s/ Peter R. Morris*
                     Peter R. Morris,
                     President

By:    Econometrics Management, Inc.,
Its Partner

By:    */s/ Bruce R. Tizes*
Bruce R. Tizes, President

Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR PRM DEVELOPMENT, LLC,**
**HANS LOLLICK LAND COMPANY, LLLP, AND LITTLE**
**HANS LOLLIK HOLDINGS, LLP**

Julie Ann Linares
THE LINARES LAW FIRM, P.L.L.C
2199 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
(214) 523-9006 – Telephone
(214) 614-9162 – Telecopier
Email: jlinares@linareslawfirm.com

**COUNSEL FOR ECONOMETRIC MANAGEMENT, INC.**

# EXHIBITS  A – H

Exhibits A – H will be provided within five (5) days
of the hearing for the Disclosure Statement.