**John P. Lewis, Jr.**
**Texas Bar No. 12294400**
**1412 Main Street, No. 210**
**Dallas, Texas 75202**
**Telephone: 214-742-5925**
**Facsimile: 214-742-5928**
**Email: jplewisjr@mindspring.com**

**Attorneys for Liberty Bankers Life Insurance Company**
**and Winnfield Life Insurance Company**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **PRM DEVELOPMENT, LLC,** | § | **CASE NO. 10-35547-hdh-11** |
| | § | |
| **ECONOMETRIC MANAGEMENT, INC.,** | § | **CASE NO. 10-35551-hdh-11** |
| | § | |
| **HANS LOLLICK LAND COMPANY, LLLP,** | § | **CASE NO. 10-36161-hdh-11** |
| | § | **CASE NO. 10-36159-hdh-11** |
| **LITTLE HANS LOLLIK HOLDINGS, LLP** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |
| | § | **HEARING DATE: January 12, 2011** |
| | § | **TIME: 1:45 P.M.** |

**OBJECTION OF LIBERTY BANKERS LIFE INSURANCE COMPANY AND**
**WINNFIELD LIFE INSURANCE COMPANY TO**
**DEBTORS' JOINT DISCLOSURE STATEMENT**
**[Relating to Docket No. 88]**

Liberty Bankers Life Insurance Company ("Liberty") and Winnfield Life Insurance Company ("Winnfield") (collectively, "Secured Creditors"), two secured creditors who are the largest creditors in the captioned jointly administered Chapter 11 case, hereby object to the Joint Disclosure Statement ("Disclosure Statement", Docket No. 88) filed by PRM Development, LLC ("PRM"), Econometric Management, Inc. ("EMI"), Hans Lollick Land Company, LLLP ("Big Hans"), and Little Hans Lollik Holdings, LLP ("Little Hans") (collectively "Debtors") in

connection with the Debtors' Joint Plan of Reorganization ("Plan", Docket No. 87), and in support thereof would show as follows:

## I. INTRODUCTION

Secured Creditors will not accept the Plan and will oppose confirmation because the Plan provides no meaningful benefit to Secured Creditor, seeks merely to further delay Secured Creditors in the exercise of their non-bankruptcy rights and remedies and is therefore not filed in good faith, and because the Plan is patently non-confirmable under 11 U.S.C. 1129 if Secured Creditors do not accept the Plan and oppose confirmation.

The Plan and Disclosure Statement should not be disseminated to creditors in a "fruitless" effort to confirm the Plan, which will serve only to unnecessarily further increase administrative costs and further delay resolution of the case. *In re Pecht*, 53 B.R. 768, 669-70 (Bankr. E.D. Va. 1985); *In re United States Brass Corporation*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996). Secured Creditors submit that pursuing confirmation of the Plan will serve only to delay "judgment day" for the Debtors to the detriment of Secured Creditors and further increase the costs and expenses to all parties of engaging in unproductive, contested plan confirmation litigation.

## II. BACKGROUND FACTS

1. Debtors filed the Plan and Disclosure Statement on December 2, 2010. The hearing on the approval of the Debtors' Disclosure Statement is currently set for January 12, 2011.

2. Liberty possesses claims against PRM, Big Hans, and Little Hans in the amount of at least $8,115,203.17 as of August 6, 2010, the date that PRM filed its Chapter 11 case. Certain assets transferred to EMI prior to its August 6, 2010, petition date are subject to Liberty's liens

and security interests to secure such claims. Liberty timely filed its proofs of claim in the PRM and EMI cases on December 7, 2010, and will be filing proofs of claim in the Big Hans and Little Hans cases prior to the January 11, 2011, claims bar dates in those cases.

3. Winnfield possesses claims against Bruce Tizes in the amount of at least $1,082,804.01 as of the August 6, 2010 petition date for EMI. The uninhabited residential real property in Palm Desert, California, securing such claim was allegedly transferred to EMI prior to its petition date in order to stay a pending foreclosure. Winnfield timely filed its proof of claim in EMI's bankruptcy case on December 7, 2010. Winnfield has obtained relief from the automatic stay in EMI's bankruptcy case and has foreclosed its liens and security interests in the Palm Desert Property under California foreclosure laws. Such property is therefore no longer part of EMI's bankruptcy estate.

4. According to the Claims Registers maintained in these cases, Liberty is the only creditor timely filing a proof of claim in the PRM Case. The only claims filed in the EMI Case are the proofs of claim filed by Liberty, Winnfield, and the Riverside, California, real estate taxing authorities for property taxes on the since foreclosed Palm Dessert property.

5. None of the Debtors has generated any material income or revenues since their respective petition dates according to the monthly operating reports filed to date by each of the Debtors in their respective cases.

### III. OBJECTIONS, ARGUMENT, AND AUTHORITIES

### Objections to Approval of Disclosure Statement due to Fatal Plan Defects

6. Congress enacted Sections 1122, 1125, 1126, and 1129 of the Bankruptcy Code to govern, among other things, formulation, dissemination, acceptance, and confirmation of

reorganization plans. Debtors cannot ignore or disregard those sections to reach their desired outcome. Although Secured Creditors recognize that plan confirmation issues are generally not the subject of a disclosure statement hearing, such issues are relevant and should be considered if the proposed plan is patently non-confirmable.

7. Courts have generally refused to approve a disclosure statement and allow dissemination of a plan to creditors when it is clear from the face of the plan that it cannot be confirmed under Section 1129 as a matter of law. See, e.g. *In re United States Brass Corporation, supra,; In re Pecht*, supra; *In re Kehn Ranch*, 41 B.R. 832, 833 (Bankr. S.D. 1984); *In re Weiss-Wofe, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986); *In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill.) aff'd 80 B.R. 448 (N.D. Ill. 1987); *In re Atlanta West VI*, 91 B.R. 620 (Bankr. N.D. Ga. 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973 (Bankr. N.D.N.Y. 1988). The *Pecht* court noted: "a clear showing in a proffered disclosure statement that the plan could not be confirmed justifies a court in denying approval of the disclosure [statement]". 53 B.R. at 669-70. Similarly, the Florida bankruptcy court in *In re Valrico Square Limited Partnership*, 113 B.R.794, 796 (Bankr. S.D. Fla. 1990) stated that it would be a waste of time and resources and not in the best interests of the bankruptcy estate to solicit votes for an un-confirmable reorganization plan.

8. In this case, the Plan is fatally defective on its face as to one or more of the Debtors. First, the Plan cannot be confirmed if Liberty and Winnfield reject the Plan because there is no *bona fide* accepting impaired class of non-insider unsecured creditors for EMI or PRM that can accept the Plan under Section 1126. It is questionable whether there are any genuine, *bona fide* creditors in the Big Hans or Little Hans cases other than Liberty and the Virgin Islands taxing authorities. Absent allowance of certain improperly scheduled claims that Liberty and Winnfield

will object to, there is no accepting impaired class of unsecured creditors for "cram-down" purposes. Moreover, the Disclosure Statement does not contain any information on a "debtor-by-debtor" basis of the number of creditors and amounts of such creditors scheduled or filed claims against each of the Debtors so that creditors and the Court can readily ascertain which claimants are within which classes with respect to which Debtor.

9. Even if there were genuine *bona fide* non-insider creditors that are properly classified as to each of the Debtors, the aggregate amount of such creditors' claims are relatively insignificant in comparison to the amount of the claims filed by Liberty and Winnfield. Confirmation of the Plan over the objections and rejections of Liberty and Winnfield would not satisfy the "good faith" and "fair and equitable" tests required for "cramdown" under Section 1129.

10. With respect to EMI, there are no creditors holding allowable claims other than Liberty and Winnfield because that entity was formed on August 4, 2010, two days before its Chapter 11 filing, and has no personal or recourse obligation or liability on any debts created by the transferors of any property conveyed into EMI on the eve of its bankruptcy filing. The only property transferred to EMI encumbered by liens and security interests were partnership interests in Big Hans and Little Hans and the Palm Dessert real estate. Consequently, Liberty and Winnfield are the only "creditors" of EMI possessing allowable claims on account of any EMI property that is subject to a lien claim within the definition of "claim" in the Bankruptcy Code. Because the Palm Dessert real estate has been foreclosed by Winnfield, EMI no longer owns any property subject to any junior or tax liens on that property and EMI has no personal or recourse liability to those claimants.

11. The Plan separately classifies alleged claims of Robert Santarpia as a Class 5 Claim and the alleged claims of David and Andrea Feinberg as a Class 6 Claim. Such separate classification is improper because (a) those claimants no longer possess allowable claims against EMI because the Palm Dessert Property has been foreclosed and is no longer owned by EMI, and (b) even if such claimants possessed allowable or valid recourse claims, such claims should be included within the general unsecured class because any "collateral" for such claims has been foreclosed out by the senior lien-holder. Section 1122(a) of the Bankruptcy Code requires substantially similar claims to be classified together in the same class and does not permit a plan to "gerrymander" classes in order to obtain an accepting impaired class for confirmation purposes. *Phoenix Mutual Life Insurance Co. v Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir. 1991). *Greystone* holds that claims should be classified "based upon the similarity of its members' priority status and other legal rights against the debtor's assets". 995 F.2d at 1277. The true objective and impropriety of such separate classification in the Plan before the Court, - i.e. to gerrymander plan voting in an effort to obtain an accepting impaired class - is abundantly clear and evident since the Plan provides that the Santarpia and Feinberg claims would receive the same treatment as the unsecured class. Separate classification is improper under *Greystone* and the Plan does not comply with Section 1122 and 1129(a) and cannot be confirmed as a matter of law.

12. The Plan is not confirmable because the treatment proposed for priority tax claims in Class 2 does not comply with the Bankruptcy Code. First, the Plan proposes to pay such claims over a 6 year period instead of the 5 year period provided by Section 1129(9)(C) of the Bankruptcy Code. Next, the 4.5% interest rate provided by the Plan does not equal the interest rate provided by applicable nonbankruptcy laws for property taxes and violates Section 511 of

the Bankruptcy Code which requires interest on priority tax claims to be the same as the taxing authority's interest rate under applicable tax laws.

13. The Plan is not confirmable because Winnfield, the Class 4 Creditor, is to receive no distributions on account of its deficiency claims following the foreclosure of the Palm Desert Property. The Plan provides that Winnfield's foreclosure of the Palm Desert Property is in full satisfaction and release of all obligors on the Winnfield claims and thus improperly attempts to obtain a release for Bruce Tizes, the maker of the note and original obligor on the loan, in violation of applicable laws and the Bankruptcy Code. The Plan is not confirmable unless it provides that any and all rights and remedies that Winnfield possesses against Mr. Tizes under applicable laws are preserved, retained, and unimpaired under the Plan and that the Plan shall not constitute a release, waiver, or satisfaction of those claims, rights, and remedies.

14. The Plan is not confirmable because the treatment provided to Liberty as a Class 3 Creditor is not fair and equitable under Section 1129(b)(2)(A) on the face of the Plan.

15. The Plan is not confirmable because the discharge provisions of the Plan exceed the scope of the discharge permitted under the Bankruptcy Code and improperly and impermissibly seeks to discharge Liberty's claims against third party guarantors who are not debtors in these cases.

### **Objections to Disclosure Statement due to Lack of Adequate Information**

16. The purpose of a disclosure statement is to provide creditors and other parties in interest with the information necessary to make an informed decision on a proposed plan. *In re Cajun Electric Power Cooperative Incorporated v Southwestern Electric Power Company*, 150 F.3d 503, 518 (5th Cir. 1998). "Adequate information" means that the disclosure statement must include all pertinent information bearing on the success or failure of the proposed plan. *In re*

*Congregate I*, 1221 B.R. 760, 765 (Bankr. S.D. Ohio 1990). "Adequate information" is to be determined based upon the facts and circumstances of a particular case. *Cajun Electric*, supra, at 518.

17. The Disclosure Statement lacks adequate information for the following reasons:

    a. The Disclosure Statement contains no disclosure, discussion, or explanation of the tax consequences to any party as a result of the plan, which disclosure is required under the applicable disclosure standards;

    b. The Disclosure Statement contains no information (or inadequate information) as to how much each of the Debtors expects to "raise" as "capital contributions" from its current interest holders or third party sources in order to fund the Plan. The Disclosure Statement contains no disclosure or discussion of the effect and impact of the pending bankruptcy cases Peter Morris and his affiliated entities, the principal of PRM, on PRM's ability to "raise" the promised "capital contributions";

    c. The Disclosure Statement contains no information (or inadequate information) as to the when each of the Debtors expects to receive the "capital contributions" from its current interest holders or third party sources in order to fund the Plan;

    d. The Disclosure Statement contains no information (or inadequate information) as to the identity of any interest holder or third party source from whom each of the Debtors expects to receive the "capital contributions" in order to fund the Plan;

    e. The Disclosure Statement contains no information (or inadequate information) as to the financial ability and resources of the parties from whom each of the Debtors expects to receive the "capital contributions" in order to fund the Plan and whether such

parties have made any binding or enforceable commitments to make such contributions and, if so, the nature and amount of such commitments;

f. The Disclosure Statement contains no budget, estimation, or projection for Debtors' future operating costs, plan payments, funding requirements, or payments to Creditors, including Liberty. The Disclosure Statement contains no disclosure (or inadequate disclosure) of the respective Debtors' source of funds following confirmation with which to make the payments proposed by the Plan.

g. The Disclosure Statement contains no information (or inadequate information) as to the amount of delinquent property taxes on the properties owned by Big Hans and Little Hans and the amount required to be paid periodically under the Plan on account of such delinquent taxes. The Disclosure Statement is unclear whether EMI intends to pay property taxes to the taxing authorities on account of the Palm Desert Property or whether those claims are not addressed by or included in the Plan.

h. The Disclosure Statement contains no information (or inadequate information) as to the estimated or projected amounts required to be paid as administrative expenses and claims, including allowed fees and compensation for Debtors' professionals, in order to confirm the Plan and whether the Debtors have sufficient funds to pay such administrative expenses and claims.

i. The Disclosure Statement contains no information (or inadequate information) as to the historical marketing and sales efforts of Big Hans and Little Hans to sell their respective properties during the approximately 8 years such Debtors have owned the properties. Such information, including a complete listing of all *bona fide* independent third party offers received during such period and all contracts of sale entered into by the Debtors, the proposed purchase

price and other material terms of such offers or contracts, and the identities of the prospective purchasers, should be included in the Disclosure Statement to enable creditors to assess the feasibility of Debtors' proposed sales prices and marketing efforts in the Plan.

j. The Disclosure Statement contains no information regarding who the Debtors will engage as broker, agent, or other professional to assist in the sale and marketing of the Big Hans and Little Hans properties or the costs, fees, compensation, and other terms of such employment or engagement. Such information is necessary for creditors to evaluate the merits of the proposed Plan.

k. The Disclosure Statement should disclose that Liberty believes that the value of the Big Hans and Little Hans properties does not exceed the amount of its claims and that sales in the future will not generate a sufficiently higher price to offset the continuing debt accrual on Liberty's claims.

l. The Disclosure Statement contains no disclosure (or inadequate disclosure) as to the specific potential claims and causes of action to be retained and/or pursued by the respective Debtors. While the Disclosure Statement refers to an alleged improper foreclosure of the Palm Desert Property by Winnfield, there is no disclosure or discussion of the legal and factual basis for such allegations and what legal rights or remedies may be pursued on account of those allegations.

m. The Disclosure Statement contains no discussion or disclosure (or inadequate discussion or disclosure) of events occurring during the course of this Chapter 11 case and, specifically the proceedings involving the motions for relief from automatic stay filed by Liberty and Winnfield and the results of such proceedings to date.

WHEREFORE, Secured Creditors respectfully request that the Court enter an order denying approval of the Disclosure Statement and granting such creditors such other and further relief as to which they are entitled.

| | |
|---|---|
| Dated: January 5, 2011 | */ s / John P. Lewis, Jr.* <br> John P. Lewis, Jr. <br> State Bar No. 12294400 <br> 1412 Main Street, Suite 210 <br> Dallas, Texas 75202 <br> Telephone: (214) 742-5925 <br> Facsimile: (214) 712-5928 <br> Email: jplewisjr@mindspring.com <br><br> ATTORNEY FOR LIBERTY BANKERS LIFE INSURANCE COMPANY and WINNFIELD LIFE INSURANCE COMPANY, SECURED CREDITORS |

### CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2011, I caused a true and correct copy of the foregoing Objection to be served by electronic noticing, email transmission, facsimile transmission, and/or First Class United States mail on the Office of the United States Trustee, Gerrit M. Pronske,, Esq., Pronske & Patel, P.C., 2200 Ross Avenue, Suite 5350, Dallas, Texas 75201, Attorneys for PRM Development, LLC, Hans Lollick Land Company, LLLP, and Little Hans Lollik Holdings, LLP, and Julie A. Linares, Esq., 2199 Turtle Creek Blvd, Suite 300, Dallas, Texas 75201, Attorney for Econometric Management, Inc.

*/ s / John P. Lewis, Jr.*