## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **PRM DEVELOPMENT, LLC,** | § | **CASE NO. 10-35547-hdh-11** |
| **ECONOMETRIC MANAGEMENT, INC.,** | § | **CASE NO. 10-35551-hdh-11** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

## LENDER'S LIQUIDATING JOINT PLAN OF REORGANIZATION
### (Dated: March 2, 2011)

Liberty Bankers Life Insurance Company ("**Lender**" or "**Liberty**"), submits the following Lender's Liquidating Joint Plan of Reorganization (as the same may hereafter be modified, amended, restated, or supplemented in whole or in part, the **"Plan"**) for PRM Development, LLC ("**PRM**") and Econometric Management, Inc. ("**EMI**"), Debtors and Debtors in Possession (collectively, **"Debtors"**), pursuant to Section 1121 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*, the **"Bankruptcy Code"**).

## SUMMARY OVERVIEW

PRM is a Delaware limited liability company which was organized in 2001. EMI is a Texas corporation that was formed on August 4, 2010. Liberty is an Oklahoma insurance company having its principal offices in Dallas, Dallas County, Texas.

The Plan's objective is to liquidate all of the property of each Debtor as soon as practicable following Confirmation and to distribute the net sales proceeds realized from such liquidation sales to secured and unsecured creditors in accordance with the priorities established by the Bankruptcy Code and applicable laws. The following table presents a summary of claims and proposed treatment under the Plan.[1]

| Class - Description | Estimated Number of Claimants Within Class | Estimated Aggregate Amount of Allowable Claims | Proposed Treatment |
|---|---|---|---|
| **Administrative Claims** | **3** | **$20,000 to $30,000** | **Payment on Effective Date – Unimpaired** |
| **Administrative and Priority Tax Claims** | **None** | **-0-** | **Payment on Effective Date - Unimpaired** |
| **Class 1 – Priority Claims** | **None** | **-0-** | **Payment on Effective Date - Unimpaired** |
| | | | |

---

[1] This summary is provided only for illustrative purposes and convenience of reference. The express and specific terms of the Plan hereinafter set forth in detail shall govern and control any inconsistency or conflict between this descriptive summary and the actual terms of the Plan.

| | | | |
|---|---|---|---|
| **Class 2 – Secured Claim of Lender** | 1 | $8,115,203.17 | Payment from Sales Proceeds of Collateral - Impaired |
| **Class 3A – PRM Unsecured Claims** | 7 | $19,073.68 | Allowed Claims Paid Without Interest From Pro Rata Share of any Excess Sales Proceeds of PRM Partnership Interests or Other Property (if Any) of PRM- Impaired |
| **Class 3B – EMI Unsecured Claims** | 19 | $10,035,675.00 | Allowed Claims Paid Without Interest From Pro Rata Share of any Excess Sales Proceeds of EMI Partnership Interests or Other Property of EMI (if Any)- Impaired |
| **Class 3C – Winnfield Life Insurance Company and Liberty Bankers Life Insurance Deficiency Claims** | 2 | In Excess of $82,000.00 | No Distributions – Subordinated to Classes 3A and 3B - Impaired |
| **Class 4A – PRM Equity Interests** | 1 | 100% | All Equity Interests Retained - Unimpaired |
| **Class 4B – EMI Equity Interests** | 3 | 100% | All Equity Interests Retained - Unimpaired |

The Plan provides that all of the existing shareholder and membership interests of the Debtors' equity security holders will be retained by such parties.

**LENDER DOES NOT BELIEVE THAT THERE WILL BE ANY EXCESS PROCEEDS FROM THE SALE OF THE EMI PARTNERSHIP INTERESTS OR THE PRM PARTNERSHIP INTERESTS OR THAT THERE WILL BE ANY PROCEEDS FROM THE SALE OF ANY OTHER PROPERTY CLAIMED BY THE DEBTORS IN EXCESS OF ADMINISTRATIVE AND PRIORITY CLAIMS. THEREFORE, LENDER DOES NOT ANTICIPATE THAT THERE WILL BE ANY PAYMENTS OR DISTRIBUTIONS TO ANY HOLDERS OF CLAIMS IN CLASS 3A AND 3B AND SUCH CLASSES SHALL BE DEEMED TO HAVE REJECTED THE PLAN.**

**LENDER AND WINNFIELD LIFE INSURANCE COMPANY WILL ACCEPT THE PLAN AND LENDER SHALL SEEK TO CONFIRM THE PLAN DESPITE THE DEEMED REJECTION OF THE PLAN BY CLASS 3A AND CLASS 3B CREDITORS.**

## ARTICLE I.

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

**1.01** **Administrative Claim** means a Claim for payment of an administrative expense under §503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under §507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating its business, including wages, salaries or commissions for services rendered after the Petition Date, (b) Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. §1930, and (d) all Allowed Claims entitled to be treated as Administrative Claims by virtue of a Final Order entered under §546(c)(2)(A) of the Bankruptcy Code.

**1.02** **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the percentage of partnership interest or number or percentage of shares of stock of any Allowed Interest.

**1.03** **Allowed Claim and Allowed Interest** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the applicable Debtor, proof of which, if required, was Filed on or before the Bar Date, which is not a Contested Claim or Contested Interest, (ii) if no proof of claim or interest was so Filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent, which is not a Contested Claim or Contested Interest, or (iii) a Claim or Interest allowed hereunder or by Final Order. An Allowed Claim or Allowed Interest does not include any Claim or Interest or portion thereof which is a Disallowed Claim or Disallowed Interest or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, an Allowed Claim or Allowed Interest shall not include any amount for punitive damages or penalties.

**1.04** **Avoidance Actions** means any claim or cause of action belonging to the Debtor and arising under the Bankruptcy Code, including but not limited to §§544, 547, 548, 549, and 550.

**1.05** **Bankruptcy Code** means Title 11 of the United States Code, as amended.

**1.06** **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

**1.07** **Bar Date** means December 8, 2010.

**1.08** **Business Day** means any day other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.09** **Causes of Action** means any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtors arising before, on, or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action the Debtors or their Estates may have against any Person arising under chapter 5 of the Bankruptcy Code, or

any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, including but not limited to any claim or cause of action under a policy of insurance, Avoidance Actions under the Code, and any other causes of action belonging to the Debtors or the Estates.

     **1.10**   **Claim**  means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

     **1.11**   **Claimant** means a holder of a Claim.

     **1.12**   **Class**  means all of the holders of Claims against or Interests in the Debtors that have been designated as a class in Article III hereof.

     **1.13**   **Collateral** means any property or interest in property of the Debtors' Estates that is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code.

     **1.14**   **Confirmation** means the Bankruptcy Court's confirmation of the Plan.

     **1.15**   **Confirmation Date**  means the date of entry by the Bankruptcy Court of an order confirming the Plan.

     **1.16**   **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court at which the Plan Proponent seeks Confirmation of this Plan.

     **1.17**   **Confirmation Order** means the Order confirming this Plan signed and entered by the Bankruptcy Court.

     **1.18**   **Consummation** shall mean the instant upon which the first distributions of cash or property have been made to any Class of Creditors under this Plan, at which time this Plan shall be deemed substantially consummated and on which date this Plan shall be fully effective.

     **1.19**   **Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in Debtors that is: (i) listed in Debtors' Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely Filed; (ii) listed in Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been Filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in Debtors' Schedules; or (iii) the subject of an objection which has been or may be timely Filed and which Claim has not been allowed or disallowed by Final Order. Further, except as otherwise provided in this Plan, a Contested Claim shall also include any Claim as to which the holder has retained property of the Estate.

To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection. Notwithstanding this definition, if a Class 4 Claim is (i) not listed in the Debtors' Schedules as disputed, contingent, or unliquidated and is asserted in a proof of claim that has been timely Filed; and (ii) is not the subject of an objection filed within sixty (60) days after the Effective Date, such Claim shall be deemed to be an Allowed Claim in the amount asserted in the timely Filed proof of claim and shall no longer be eligible to be a Contested Claim.

1.20 **Creditor** means the holder of a Claim as of the Petition Date.

1.21 **Debtor** or **Debtors** means PRM Development, LLC and/or Econometric Management, Inc., individually or collectively.

1.22 **Debtor's Assets** means all assets of any kind or description comprising the Debtor's Estate.

1.23 **Disallowed Claim or Disallowed Interest** means a Claim against or Interest in the Debtor, or any portion thereof (i) that has been disallowed by Final Order, (ii) proof of which has been untimely Filed and as to which no Order of allowance has been entered by the Bankruptcy Court, or (iii) listed as disputed, contingent, or unliquidated and as to which no proof of claim or proof of interest has been timely Filed.

1.24 **Disclosure Statement** means any written disclosure statement, as amended, approved by the Bankruptcy Court that Lender has distributed to solicit acceptances of the Plan.

1.25 **Effective Date** means the date on which Lender takes the steps necessary to effectuate the Plan. Lender shall file a "Notice" of the occurrence of the Effective Date promptly following such occurrence.

1.26 **EMI Partnership Interests** means all of the partnership or other equity interests that EMI possesses in Hans Lollick Land Company, LLLP and/or Little Hans Lollik Holdings, LLP.

1.27 **Entity** includes any individual, partnership, limited liability company, corporation, estate, trust, governmental unit, unincorporated association, person, and the United States Trustee.

1.28 **Estate** means the Debtor's estate, consisting of all non-exempt assets of the Debtor, as created under §541 of the Bankruptcy Code upon the commencement of its Chapter 11 Case.

1.29 **Estimated Claim** means any Contested Claim which is estimated in accordance with §502(c) of the Code. For purposes of distribution, the estimated amount of such Contested Claim pursuant to §502(c) shall be deemed the Allowed Amount of such Claim, subject to the provisions of §502(j) that provide for reconsideration of an allowed claim for cause. For the

full satisfaction of its Contested Claim and its Allowed Claim, a Claimant shall have, as its sole and exclusive remedy against the Debtor, the rights to payment provided under this Plan and shall have no other rights or remedies and may not, following Consummation, assert any other right against the Debtor, Claimant's estimated and Allowed Claim being fully satisfied by Debtor's payment obligations described in this Plan, and any amount in excess thereof being fully released, voided and discharged by the Confirmation of this Plan.

      **1.30**    <u>**Fee Claim**</u> means a Claim for fees and expense reimbursements under Sections 330 or 503(b) of the Bankruptcy Code.

      **1.31**    <u>**Filed**</u> means filed with the Bankruptcy Court or any other court of competent jurisdiction.

      **1.32**    <u>**Final Order**</u> means an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction, that has not been amended, modified, vacated, or reversed and as to which (i) no stay is in effect, (ii) the time to appeal, petition for *certiorari*, or move for reconsideration, new trial, or alteration or amendment thereof has expired and as to which no appeal, petition for *certiorari*, or other proceedings for alteration, amendment, or reconsideration thereof shall then be pending or, (iii) in the event that an appeal, writ of *certiorari*, reconsideration, new trial, or other alteration or amendment thereof has been sought, such order shall have been affirmed by the highest court to which such order may be appealed, or *certiorari* has been denied, and the time to take any further appeal, petition for *certiorari* or move for re-argument or rehearing shall have expired.

      **1.33**    <u>**General Unsecured Claims**</u> means an Unsecured Claim that is not entitled to priority under §507 of the Bankruptcy Code.

      **1.34**    <u>**Guarantor Action**</u> means any action, proceeding, litigation, cause of action, arbitration, or similar action or proceeding filed or taken by any holder of an Allowed Claim against any other entity on account of any guaranty or indemnity to recover from such guarantor any Allowed Claim against Debtor.

      **1.35**    <u>**Impaired**</u> means the treatment of an Allowed Claim or Allowed Interest under this Plan <u>unless</u>, with respect to such Claim or Interest, either: (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest.

**1.36    Interest Holder** means the members of PRM Development, LLC and/or the shareholders of Econometric Management, Inc., collectively or individually.

**1.37    Lien** means all valid and enforceable liens, security interests, claims, and encumbrances against any property of the Debtors' Estates that are permitted by, or not avoided pursuant to, the Bankruptcy Code.

**1.38    Net Sale Proceeds** means the cash or cash equivalents and any other value, or proceeds arising from the sale or disposition of the Debtors' Assets available for the resulting distributions to holders of Allowed Claims, following payment of any reasonable costs of sale including, but not limited to, all reasonable investment banker fees, brokerage commissions, professional fees, legal fees, accounting fees, marketing and sale expenses, title fees, *ad valorem* and other taxes, levies, assessments, other governmental charges, or any other type of expense, fee or cost incurred in connection with the disposition of such assets.

**1.39    Other Priority Claims** means and includes all Priority Claims except Administrative Claims and Priority Tax Claims.

**1.40    Order** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction.

**1.41    PRM Partnership Interests** means all of the partnership or other equity interests that PRM Development, LLC possesses in Hans Lollick Land Company, LLLP and/or Little Hans Lollik Holdings, LLP.

**1.42    Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

**1.43    Petition Date** means August 6, 2010, the date Debtors filed their respective Chapter 11 cases.

**1.44    Plan** means this Lender's Liquidating Joint Plan of Reorganization, as it may be amended, supplemented, modified, or restated from time to time as permitted herein or in accordance with Section 1127 of the Bankruptcy Code.

**1.45    Plan Documents** mean this Plan, any accompanying Disclosure Statement, and any and all other documents necessary to effectuate this Plan, and all exhibits and attachments to any of the foregoing.

**1.46    Plan Proponent** means Liberty Bankers Life Insurance Company.

**1.47    Priority Claim** means all Claims entitled to priority under section 507(a)(2)-(a)(7) and (a)(9) of the Bankruptcy Code.

**1.48** **Priority Tax Claim** means all Claims for Taxes entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.49** **Pro Rata** shall mean the same proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class established by this Plan. To the extent that Contested Claims exist in such Class, until all such Contested Claims shall have become Allowed Claims, *pro rata* shall mean the same proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims and Contested Claims in such Class.

**1.50** **Reorganized Debtor** means the Debtor on and after the Effective Date.

**1.51** **Schedules** means those schedules and statements of financial affairs filed by the Debtors under Rule 1007 of the Federal Rules of Bankruptcy Procedure, as any such schedule or statement may have been or may hereafter be amended from time to time.

**1.52** **Secured Claim (or Allowed Secured Claim)** means an Allowed Claim that is secured by a Lien on or security interest in property in which either Debtor or its Chapter 11 Estate has an interest, or that is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in such Debtor's interests or the Estate's interests in such property, or to the extent of the amount subject to set-off, as the case may be.

**1.53** **Taxes** means and includes all federal, state, county and local income, *ad valorem*, excise, stamp and other taxes of any type or nature whatsoever.

**1.54** **Tax Claims** means any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to §507(a)(8) of the Code; or (b) secured by valid Liens on assets of the Debtor existing on the Confirmation Date. Additionally, all Liens securing Tax Claims shall be deemed and legally treated as released, voided and discharged upon payment of such Claims in full.

**1.55** **Unsecured Creditor** means the holder of a Claim that is not secured by a Lien and includes General Unsecured Claims, Administrative Convenience Claims, an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

## ARTICLE II

## TREATMENT OF NON-CLASSIFIED CLAIMS

This Plan does not classify Claims against the Debtors having priority as specified in Section 507 of the Bankruptcy Code, which Claims shall be treated as follows:

**2.01    Administrative Claims:**

(a)    **In General.**  Each holder of an Administrative Claim except as otherwise set forth in this Article 2 (and specifically excluding Priority Tax Claims as set forth in Section 2.2 below) shall receive from the Debtor either: (i) with respect to Administrative Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within 10 days after the Effective Date, from the Debtor; (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within 10 days after such claim becomes an Allowed Administrative Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

(b)    **Fee Claims.**  Each professional person whose retention with respect to the Debtor's case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within thirty (30) days after the Confirmation Date and to serve notice thereof on all parties entitled to such notice.  The failure to file timely any such application as required under this Section 2.01(b) of this Plan shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly Filed pursuant to this Section 2.01(b) of this Plan, shall become an Administrative Claim only to the extent allowed by Final Order.  Fee Claims shall be paid by the Debtor either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within 10 days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within 10 days after such claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

(c)    **Administrative Claims Bar Date.**  Any other person or Entity who claims to hold  an Administrative Claim (other than a Fee Claim or Administrative Tax Claim) shall be required to file with the Court an application within thirty (30) days after the Confirmation Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this Section 2.01(c) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly Filed pursuant to this Section 2.01(c) of this Plan and to which no timely objection has been filed or an objection has been filed but overruled by the Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

**2.02    Administrative and Priority Tax Claims:**

(a)    **Administrative Tax Claims.**  Each holder of an Administrative Claim that is an Allowed Claim for Taxes for which Debtor is responsible for the period during which Debtor's Chapter 11 case is being administered, and any other Taxes of the Debtor payable pursuant to Section 507(a)(1) of the Bankruptcy Code, if any, shall be paid the Allowed Amount of such holder's Claim in cash, in full, by the Debtor within 10 days after the Effective Date.

**(b)** **Priority Tax Claims.** Each Allowed Priority Tax Claim, if any, shall be paid by the Debtor in cash within 30 days following the Effective Date.

**2.03** **U.S. Trustee Fees.** All fees payable under 28 U.S.C. § 1930 shall be paid in cash in full by the Debtor within 10 days after the Effective Date or as they come due.

**2.04.** **Lender's Advancement of Funds to Pay Administrative and Priority Claims.** To the extent Debtors lack sufficient properties or funds and to the extent necessary to confirm or consummate the Plan, Lender shall either (a) pay directly, or (b) advance to the Debtors, any amounts that may be necessary to pay Administrative or Priority Claims in accordance with the Plan.

## ARTICLE III

### DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For purposes of repayment of the Debtor's indebtedness under the Plan, the Claims and Interests are divided into the following classes:

**3.01** **Class 1: Priority Claims.** This Class consists of Allowed Claims, if any, entitled to priority under §507(a) of the Code other than Priority Tax Claims. Debtor does not believe that there are any Claims within this Class.

**3.02** **Class 2: Secured Claims of Liberty Bankers Life Insurance Company.** This Class consists of the Allowed Secured Claim of Liberty Bankers Life Insurance Company, or its successors or assigns, that is secured in whole or in part by Liens on the PRM Partnership Interests and the EMI Partnership Interests. Lender's Claims consist of any and all debts, obligations, liabilities, and amounts for which any Person is obligated, liable, or indebted to Liberty Bankers Life Insurance Company under the promissory notes, mortgages, deeds of trust, security agreements, guaranties, and other loan and security documents, as the same may have been modified, amended, renewed, extended, supplemented, or restated from time to time. To the extent the value of such collateral is less than the amount of the Allowed Claim of Liberty Bankers Life Insurance Company against either PRM or EMI, such resulting deficiency shall be a Class 3C Allowed Claim.

**3.03A** **Class 3A:** This Class consists of Allowed General Unsecured Claims against PRM Development, LLC other than the Claims of Lender or Winnfield Life Insurance Company.

**3.03B** **Class 3B:** This Class consists of Allowed General Unsecured Claims against Econometric Management, Inc. other than the Claims of Lender or Winnfield Life Insurance Company.

**3.03C** **Class 3C:** This Class consists of Allowed General Unsecured Claims, if

any and as the case may be, of (a) Liberty Bankers Life Insurance Company against PRM Development, LLC and Econometric Management, Inc., and (b) Winnfield Life Insurance Company against Econometric Management, Inc.

       **3.04A   Class 4A: Interests in PRM.**    This Class consists of the Allowed Interests in PRM Development, LLC.

       **3.04B   Class 4B:  Interests in EMI.**    This Class consists of the Allowed Interests in Econometric Management, Inc.

**ARTICLE IV**

**PROVISIONS FOR SATISFACTION
OF CLAIMS AND INTERESTS**

       The Claims and Interests classified in Article III hereof shall be satisfied in the manner set forth in this Article IV. The following treatment of, and the consideration to be received by, Persons and Entities holding Allowed Claims against the Debtors pursuant to this Plan shall be in full satisfaction of their respective Allowed Claims against the Debtors' Estates but shall not release, discharge, waive, or impair Debtors' obligations, liabilities, or indebtedness to such Persons.

       **4.01    Class 1: Priority Claims.**  Holders of Allowed Claims in Class 1 will be paid 100% of the Allowed Amount of their Claims by the Debtor on the later of 10 Business Days after the Effective Date or 10 Business Days after their Claims are Allowed by Final Order of the Bankruptcy Court.

       **4.02    Class 2: Secured Claims of Liberty Bankers Life Insurance Company.**  This Claim consists of the Allowed Secured Claim of Liberty Bankers Life Insurance Company. In addition to the amount of such Claim as of the Petition Date, such Allowed Claim shall include any interest accruing after the Petition Date and Lender's reasonable costs, expenses, attorney's fees, and other charges incurred in connection with such Claim to the extent of the value of Lender's Collateral. The Class 2 Claim is impaired and shall be paid and satisfied in full as follows:

       **Sale of Partnership Interests**.  The PRM Partnership Interests and the EMI Partnership Interests shall be sold to the highest bidder for cash at a public sale to be conducted by Lender, as Plan Proponent, within thirty (30) days following the Effective Date, which sale shall be without warranty or representation of any kind whatsoever but shall be free and clear of all liens and encumbrances of Lender and any other Creditor or Person in accordance with Section 363 of the Bankruptcy Code. Lender's Liens shall attach to the proceeds of any such sale(s) and shall constitute a first priority, senior lien on such proceeds until indefeasibly paid to Lender and indefeasibly applied to Lender's Allowed Claims. Lender shall have the right and shall be entitled to bid at such sale and to become the purchaser of the PRM Partnership Interests and/or the EMI Partnership Interests by credit bidding any portion of its Allowed Secured Claims

against either or both of the Debtors as Lender elects in its sole and absolute discretion.

The PRM Partnership Interests and the EMI Partnership Interests will be offered for sale, first individually and then collectively, and shall be sold either individually or collectively, depending upon which sale achieves the highest collective Net Sales Proceeds. All Persons other than Lender desiring to participate in such sale and to bid on such partnership interests will be required to (a) deposit in escrow with Lender or an independent third party reasonably acceptable to Lender a forfeitable good faith earnest money deposit of at least $1,000,000.00 at least three (3) Business Days prior to the scheduled sale date, which deposit will be refunded promptly if such Person is not a successful bidder at such sale, and (b) provide Lender, as Plan Proponent, with satisfactory evidence that such potential bidder possesses the funds or other financial resources to close any sales transaction in excess of $5,000,000.00 within three (3) Business Days after such sale should such Person be the successful and highest bidder at such sale. Lender, as Plan Proponent, shall have the right in its sole and absolute discretion to (i) engage a professional broker, auctioneer, or other agent to advertise, promote, and/or conduct such sale(s), or (ii) adjourn, postpone, continue, or reschedule such sale for any reason whatsoever. All Net Sales Proceeds realized from such sale(s) of the EMI Partnership Interests and the PRM Partnership Interests shall first be paid to Lender to be applied to Lender's Allowed Claims until such Allowed Claims are indefeasibly paid and satisfied in full. No Creditor or Interest Holder shall receive any distribution or payment on account of such sale(s) until after the Lender's Allowed Claim is indefeasibly satisfied and paid in full.

The Class 2 Claimant shall retain all Liens and security interests in the PRM Partnership Interests, the EMI Partnership Interests, and any other property constituting its Collateral until the closing and consummation of the sale of such Collateral and the indefeasible receipt by Lender of the Net Sales Proceeds realized and actually received therefrom.

**4.03A    Class 3A: PRM General Unsecured Creditors.** Allowed Class 3A Unsecured Claims against PRM Development, LLC shall only be paid from the Net Sale Proceeds, if any, realized and actually received by the Debtor from any sale of such Debtor's property in excess of any Liens encumbering such property, including, without limitation the Liens possessed by Lender. Creditors holding Allowed Claims in Class 3A shall be paid, without interest, their Pro Rata portion and share of any such excess Net Sale Proceeds by the Reorganized Debtor within thirty (30) days from the closing date of the sale of the property generating such proceeds. In no event shall any holder of an Allowed Class 3A Claim (a) receive any Net Sales Proceeds from the sale of the PRM Partnership Interests until Lender's Allowed Claim secured thereby is paid and satisfied in full, or (b) receive more than 100% of its Allowed Class 3A Claim.

**4.03B   Class 3B: EMI General Unsecured Claims.** Allowed Class 3B Unsecured Claims against Econometric Management, Inc. shall only be paid from the Net Sale Proceeds, if any, realized and actually received by the Debtor from any sale of such Debtor's property in excess of any Liens encumbering such property, including, without limitation the Liens possessed by Lender. Creditors holding Allowed Claims in Class 3B shall be paid, without interest, their Pro Rata portion and share of any such excess Net Sale Proceeds by the

Reorganized Debtor within thirty (30) days from the closing date of the sale of the property generating such proceeds. In no event shall any holder of an Allowed Class 3B Claim (a) receive any Net Sales Proceeds from the sale of the EMI Partnership Interests until Lender's Allowed Claim secured thereby is paid and satisfied in full, or (b) receive more than 100% of its Allowed Class 3B Claim.

**4.03C  Deficiency Claims of Lender and Winnfield Life Insurance Company.**
Neither Lender nor Winnfield Life Insurance Company shall receive any payments or distributions under this Plan on account of any unsecured deficiency claims that such Creditors may possess following the sale and disposition of the PRM Partnership Interests, the EMI Partnership Interests, or the real property located at 142 Wikil Place, Palm Desert, California. The voluntary subordination of such Claims and the acceptance of such treatment by Lender and Winnfield Life Insurance Company for purposes of this Plan shall not, however, constitute a release, waiver, subordination, or impairment of such deficiency claims as to any other Person or for any other purpose, action, proceeding, or matter.

**4.04A  Class 4A:  Interests in PRM.**  PRM Development, LLC shall retain its interests in its properties, subject to the sales procedures and requirements for the PRM Partnership Interests provided by this Plan, and the obligations to pay Allowed Claims set forth in this Plan. The Equity Holders shall retain their membership interests in the Debtor but shall not be entitled to any distributions or payments under this Plan on account of their membership interests until all payments required under this Plan have been made on account of Allowed Claims.

**4.04B  Class 4B:  Interests in EMI.**  Econometric Management, Inc. shall retain its interests in its properties, subject to the sales procedures and requirements for the EMI Partnership Interests provided by this Plan, and the obligations to pay Allowed Claims set forth in this Plan. The Equity Holders shall retain their shareholder interests in the Debtor but shall not be entitled to any distributions or payments under this Plan on account of their shareholder interests until all payments required under this Plan have been made on account of Allowed Claims.

## ARTICLE V

## DESIGNATION OF THE CLASSES OF CLAIMS
## IMPAIRED UNDER THIS PLAN

**5.01  Impairment.**  For purposes of Plan solicitation, all Classes of Claims and Interests other than Classes 1, 4A, and 4B are Impaired. Such classes, together with Class 2 and Class 3C shall be deemed to have accepted the Plan. Classes 3A and 3B shall be deemed to have rejected the Plan.

# ARTICLE VI

## MEANS FOR IMPLEMENTATION OF PLAN

**6.01** **Sales of Properties of Debtors and Reorganized Debtors**. Following Confirmation, in addition to the sale of PRM Partnership Interests and the EMI Partnership Interests and application and distribution of the Net Sales Proceeds received therefrom to the Class 2 Allowed Claim proposed in this Plan, the Debtors and Reorganized Debtors shall market and sell as soon as practicable any and all of its other properties and assets and to use the Net Sales Proceeds from the sale of such other properties and assets to pay Allowed Claims of Class 3A or Class 3B, as applicable.

**6.02** **Funding of Plan Implementation Costs**. To the extent necessary to confirm and consummate this Plan, Lender shall pay directly (or advance to Debtors for payment of) all Allowed administrative costs, expenses, priority claims, and other amounts necessary and required to effectuate and implement the Plan, including, without limitation, all amounts required to be paid on or within 30 days of the Effective Date pursuant to Article II of this Plan. All payments made (or to be made) by Lender on account of such administrative and priority claims, expenses, and costs shall be added to and become part of the Allowed Claim of Lender secured by Lender's Collateral and to be paid from the Net Sales Proceeds of the PRM Partnership Interests and the EMI Partnership Interests.

**6.03** **Payment of Debtor's Post-Confirmation Obligations**. Debtors will pay timely all obligations and debts arising after the Confirmation Date from revenues and income generated by the any sales, refinancing, or other dispositions of any of their respective properties other than the PRM Partnership Interests, the EMI Partnership Interests, or other Collateral of Lender.

**6.04** **Consummation**. For all purposes, Consummation (and substantial consummation) of this Plan shall occur the instant upon which the first distributions of cash or property have been made to any class of Creditors under this Plan, at which time this Plan shall be deemed substantially consummated and on which date this Plan shall be fully effective.

**6.05** **Post-Confirmation Management.** There shall be no change in the existing officers, directors, or other management of the Debtors after Confirmation of the Plan. Such Persons shall, however, be obligated to operate and manage the Debtors so as to effectuate all of the provisions of this Plan and shall not take any action directly or indirectly to impede, frustrate, hinder, or delay implementation of this Plan.

**6.06** **Exculpation**. Lender and Winnfield Life Insurance Company shall be entitled to rely upon advice and opinions of counsel concerning legal matters, the authenticity of affidavits, letters, telegrams, cablegrams and other methods of communication in general use and usually accepted by businessmen as genuine and what they purport to be, and upon this Plan and any schedule, certificate, statement, report, notice or other writing which they

believe to be genuine or to have been presented by a proper entity. Except for its or their own gross negligence or intentional misconduct, neither Lender nor Winnfield Life Insurance Company nor any of their respective employees, attorneys, or agents shall (a) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of any documents executed or delivered in connection with the implementation or consummation of this Plan, (b) be under any duty to inquire into or pass upon any matter or to make any inquiry concerning the validity of any representation or warranty of third parties or the performance by third parties of their obligations or (c) in any event, be liable as such for any action taken or omitted by it or them.

**6.07** **Books and Records**. The Debtors and Reorganized Debtors shall keep or cause to be kept books containing a description of all Claims, assets, receipts, disbursements and escrows, which records shall be open to inspection at all reasonable times upon reasonable request of any Creditor. As long as the Plan is not in default in payment of Allowed Claims under the Plan, all books and records of the Debtor and Reorganized Debtor relating to its properties shall be retained by the Debtor and Reorganized Debtor in order to facilitate the leasing of any vacant space to prospective tenants or the development and/or sale of any undeveloped land and other Assets, and no such documents shall be destroyed or conveyed without approval of the Bankruptcy Court.

**6.08** **Delegation of Powers**. Lender shall be entitled to delegate such authority to such employees, contractors, and agents as it shall reasonably deem necessary to perform its responsibilities, if any, under this Plan.

**6.09** **Investment of Funds**. All unencumbered proceeds and other unencumbered cash (except for amounts which the Debtors determine are needed for payment of any necessary and critical operating expenses in the normal and customary course of the Reorganized Debtors' businesses) shall be invested in United States Treasury Bills or in certificates of deposits, demand deposit or interest-bearing accounts of banking institutions insured by the Federal Deposit Insurance Corporation or such other investments as shall be prudent and appropriate under the circumstances, in such amounts and upon such terms as a reasonable and prudent fiduciary would select and with a view toward sufficient liquidity to fund the operations and future expenses of the Reorganized Debtors and to make the payments and distributions contemplated by this Plan. All interest earned on such investments, proceeds, and other cash shall be retained by the Debtors and Reorganized Debtors and use in the normal course of its business and operations.

**6.10** **Reserves**. Prior to any distribution of cash or proceeds under this Plan to any Class of Claimants, the Debtor or Reorganized Debtor shall establish adequate reserves for Contested Claims that may become Allowed Claims after the Effective Date.

**6.11** **Unclaimed Distributions**. Any proceeds or other cash held for the benefit of any Holder of an Allowed Claim, if unclaimed by the distributee within three months after the distribution, shall be re-deposited into the fund and made available for other Allowed Claims and Allowed Interests, and all liability and obligations of the Debtor and Reorganized

Debtor to such distributee with respect thereto shall thereupon cease.

## ARTICLE VII

## PROVISIONS REGARDING DISTRIBUTIONS AND OBJECTIONS TO CLAIMS

**7.01** **No Distributions Pending Allowance or Estimation of Claims**. No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

**7.02** **Reserves for Certain Distributions**. The Lender, Debtors, or Reorganized Debtors, as the case may be, shall reserve funds adequate to properly treat Contested Claims pending the resolution of any objection to such Claim.

**7.03** **Distributions After Disallowance**. In the event that any amounts held in such reserve remain after all objections to Contested Claims have been resolved by Final Order, the Lender, Debtors, or Reorganized Debtors shall make distributions of funds held in reserve on account of Claim objections on a Pro Rata basis pursuant to the terms of this Plan.

**7.04** **Treatment of Contingent or Unliquidated Claims**. Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Contested Claim for purposes related to voting, allowance, and distributions under this Plan. The Bankruptcy Court upon request by the Lender or Debtors shall in a summary proceeding for each such contingent Claim or unliquidated Claim, by estimation determine the allowability of each such contingent or unliquidated Claim.

**7.05** **Form of Payments**. Payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**8.01** **Assumption of Certain Executory Contracts and Unexpired Leases.** To the extent that either of the Debtors or any of the Debtors' properties are subject to any partnership or similar agreements relating to the PRM Partnership Interests and the EMI Partnerships Interests and any such agreements may be considered or deemed to be an Executory Contract, such partnership or similar agreements are hereby assumed by the Debtors and the Reorganized Debtors

**8.02** **General Rejection of Executory Contracts.** All Executory Contracts and unexpired leases which are not assumed pursuant to Section 8.01 above or which have not

been previously assumed or which are the subject of a pending assumption motion as of the Effective Date are hereby rejected.

**8.03    Cure of Defaults.**  Debtor shall cure all defaults existing under any assumed Executory Contract or unexpired lease pursuant to the provisions of §§ 1123(a)(5)(G) and 365(b) of the Code, by paying the amount, if any, determined by the Court required to be paid in order to assume such Executory Contract or unexpired lease.  Payment of such amounts shall be made by Debtor as soon as possible after the Effective Date.

**8.04    Claims for Damages.**  Each Person who is a party to an Executory Contract or unexpired lease rejected pursuant to this Article VIII shall be entitled to file, not later than thirty (30) days after the Effective Date, which Effective Date is the deemed date of such rejection, a proof of claim for damages alleged to arise from the rejection of the Executory Contract to which such Person is a party.  The Court shall determine any objections to such proof of claim for rejection damages unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as General Unsecured Claims.

## ARTICLE IX

## PROVISIONS FOR THE DISCHARGE, SETTLEMENT, AND ADJUSTMENT OF CLAIMS

**9.01    Reservation and Retention of Claims and Causes of Action.**  Any and all claims, causes of action, cross claims or counterclaims held or assertable by the Debtor against any Person other than Lender or Winnfield Life Insurance Company, including but not limited to: (i) the Causes of Action; (ii) any claim or cause of action under a policy of liability insurance or otherwise; (iii) the Avoidance Actions; and (iv) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by and for the benefit of the Debtor and the Reorganized Debtor effective as of the Confirmation Date.  It is the intent of the Plan Proponent that this reservation of claims against Persons other than Plan Proponent and Winnfield Life Insurance Company shall be as

broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules, and shall include any and all claims referenced in any disclosure statement filed in this case.

**9.02    Avoidance Actions**.    Unless the Debtor consents, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue any avoidance actions under Chapter 5 of the Bankruptcy Code.  Any creditor other than Lender determined to have received a transfer that is voidable pursuant to Sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

## ARTICLE X

## EFFECT OF CONFIRMATION, DISCHARGE,
## RELEASES, AND INJUNCTION

**10.01    Vesting of Property.**    Confirmation of the Plan shall vest the Debtors' Assets in the Reorganized Debtors subject to the liquidation requirements imposed by this Plan.

**10.02    Property Free and Clear.**    Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained by or in the Plan.

**10.03    Legal Binding Effect; No Discharge of Claims and Interests.**    The provisions of this Plan shall bind all Claimants and Interest holders, whether or not they accept this Plan. Because this is a liquidating Plan, neither Debtor is entitled to a discharge under Section 1141 of the Bankruptcy Code, and nothing in this Plan shall discharge either of the Debtors from any Claims, claims, debts and liabilities that arose before the Petition Date or from any Claims, claims, debts and liabilities arising after the Petition Date.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.01    Request for Relief under Section 1129(b).**    Because Class 3A and Class 3B Creditors are deemed to have rejected this Plan, the Plan Proponent requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of Section 1129(b) of the

Bankruptcy Code.

**11.02** **Headings.** All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

**11.03** **Due Authorization.** Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

**11.04** **Further Assurances and Authorizations.** The Plan Proponent shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

**11.05** **Applicable Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

**11.06** **Privileged Communications; Work Product.** For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized Debtors shall succeed to the interest of the Debtor and the Estate, to the extent provided by applicable law.

**11.07** **No Interest.** Except as expressly stated in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Filing Date.

**11.08** **Post-Confirmation Actions.** After Confirmation, the Plan Proponent may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

**11.09** **Notices.** All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.

**11.0** **Payment Dates.** Whenever any payment or distribution to be made under

the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over this Chapter 11 Case after Confirmation, notwithstanding Consummation or substantial consummation, for the following purposes:

(a) To consider and effect any modification of this Plan under Section 1127 of the Bankruptcy Code;

(b) To hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(c) To hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

(d) To hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

(e) To hear and determine all Causes of Action;

(f) To consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

(g) To make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

(h) To approve the reasonableness of any payments made or to be made, within the meaning of Section 1129(a)(4) of the Bankruptcy Code;

(i) To exercise the jurisdiction granted pursuant to Section 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

(j)     To hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

(k)     To determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Lender.

Nothing contained in this Article XII shall be construed so as to limit the rights of the Lender to commence or prosecute any claim in any court of competent jurisdiction.

Dated:  March 2, 2011                    LIBERTY BANKERS LIFE INSURANCE COMPANY

By: _/ s / Brad Phillips_
     Brad Phillips, President