Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR PRM DEVELOPMENT, LLC,**
**HANS LOLLICK LAND COMPANY, LLLP, AND LITTLE**
**HANS LOLLIK HOLDINGS, LLP**

Julie Ann Linares
THE LINARES LAW FIRM, P.L.L.C
2199 Turtle Creek Blvd., Suite 300
Dallas, TX  75219
(214) 523-9006 – Telephone
(214) 614-9162 – Telecopier
Email: jlinares@linareslawfirm.com

**COUNSEL FOR ECONOMETRIC MANAGEMENT, INC.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 10-35547-HDH** |
| **PRM DEVELOPMENT, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| **In re:** | § | |
| | § | **CASE NO. 10-35551-HDH** |
| **ECONOMETRIC MANAGEMENT, INC.,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| **In re:** | § | |
| | § | **CASE NO. 10-36161-HDH** |
| **HANS LOLLICK LAND COMPANY, LLLP,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 10-36159-HDH |
| LITTLE HANS LOLLIK HOLDINGS, | § | |
| LLP, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION

PRM Development, LLC ("PRM Development"), Econometric Management, Inc. ("EMI"), Hans Lollick Land Company, LLLP ("Great Hans LLLP"), and Little Hans Lollik Holdings, LLP, ("Little Hans LLP" and collectively "Debtors") propose the following Plan of Reorganization (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

1.1     Overview of the Plan.  The Plan provides for a reorganization of all liabilities owed by Debtors, as described herein.  The Reorganized Debtors, as provided herein, shall be the successor entity to Debtors.

1.2     Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein from revenues associated with the operations of the Reorganized Debtors' business.  All Creditors of Debtors will be paid as provided herein in accordance with the priority scheme established by the Code.

## ARTICLE II
## DEFINITIONS

As used in this Plan, the following terms shall have their respective meanings set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined.  Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.1     Administrative Claim:  Any claim for payment of any cost or expense of administration of the Chapter 11 Bankruptcy Proceedings entitled to priority in accordance with §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving Debtors' Estates and operating their business from and after the Petition Date to and including the Confirmation Date (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Distribution Date) and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against Debtors' Estates under Chapter 11 of Title 28, United States Code.

2.2     Allowed Claim or Allowed Interest:  Any Claim (a) based on an application of a Professional Person to the extent such application is approved by Final Order; (b) allowed under

this Plan; or (c) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by Debtors in their schedules filed under § 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.3    Allowed Priority Claim:  All or that portion of any Priority Claim which is or has become an Allowed Claim.

2.4    Bankruptcy Code:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to the Chapter 11 Cases, § 101 et seq. Title 11, United States Code.

2.5    Bankruptcy Rules:  The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.6    Business Day:  Any day on which banks are open to carry on their ordinary commercial banking business in Dallas, Texas.

2.7    Cash:   Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.8    Causes of Action:  All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of Debtors, for affirmative recovery of Cash or other property of the Estates, other than accounts receivable (whether such Causes are the subject of presently pending lawsuits, adversary proceedings or appeals or otherwise) existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date.

2.9    Chapter 11 Cases:  The Chapter 11 cases of PRM Development, LLC, Case Number 10-35547-HDH-11, Northern District Texas, Dallas Division, filed August 6, 2010; Econometric Management, Inc., Case Number 10-35551-HDH-11, Northern District Texas, Dallas Division, filed August 6, 2010; Hans Lollick Land Company, LLLP, Case Number 10-36161-HDH-11, Northern District Texas, Dallas Division, filed September 3, 2010; and Little Hans Lollik Holdings, LLP, Case Number 10-36159-HDH-11, Northern District Texas, Dallas Division, filed September 3, 2010.

2.10    Claim:  Any right against Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of

performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.11    Collateral:  Property in which Debtors have an interest that secures, in whole or in part, payment of an Allowed Claim.

2.12    Confirmation:  Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.13    Confirmation Date:  The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.14    Confirmation Hearing:  The date set by the Court to consider confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code.

2.15    Confirmation Order:  Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.16    Court:  The United States Bankruptcy Court for the Northern District of Texas or such other Court as may have jurisdiction of the Chapter 11 Cases.

2.17    Creditor:  Any entity that is the holder of a claim or an interest, including but not limited to: (a) a claim that arose on or before the Petition Date, (b) an interest that arose on or before the Record Date, (c) a claim against Debtors' Estates of any kind specified in § 502(g), § 502(h), or § 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.18    Debtors:  PRM Development, LLC, Econometric Management, Inc., Hans Lollick Land Company, LLLP, and Little Hans Lollik Holdings, LLP.

2.19    Disclosure Statement:  The written Joint Disclosure Statement in respect to this Plan approved by the Court pursuant to § 1125 of the Bankruptcy Code.

2.20    Disputed Claim:  Any claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.21    Effective Date:   The date ten (10) business days after the entry of the Confirmation Order or such other date as provided in the Confirmation Order.

2.22    EMI:  Econometric Management, Inc.

2.23    Equity Interest Holders:  All members of PRM Development and EMI, all general and limited partners of Great Hans LLLP, and all partners Little Hans LLP.

2.24 <u>Estates</u>:  The Estates created in the Chapter 11 Cases for Debtors by Bankruptcy Code § 541.

2.25 <u>Fee Application</u>:  An application of a Professional Person under §§ 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

2.26 <u>Foley & Lardner</u>:  Foley & Lardner, LLP

2.27 <u>Final Distribution</u>:  Final distribution under the Plan to be applied to the payment of the Allowed Claims.

2.28 <u>Final Order</u>:  An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.29 <u>Great Hans Loan</u>:  The loan dated approximately September 17, 2004 between Great Hans LLLP and Liberty in the principal amount of $3,750,000, as modified on or about September 30, 2007, October 31, 2007 and December 1, 2008, evidenced by, *inter alia*, the Loan Agreement, Promissory Note, Mortgage, Security Agreements, Loan Modification Agreement, Modification of Mortgage and Second Modification Agreement (increasing principal amount to $4,690,000), Limited Guaranty, Pledge and Security Agreement with Assignment of Rights, Modification of Mortgage and Third Modification Agreement and all other loan documents.

2.30 <u>Great Hans LLLP</u>:  Hans Lollick Land Company, LLLP.

2.31 <u>Great Hans Property</u>:  The undeveloped 510-acre island located approximately one and one-half mile north of St. Thomas, USVI known as Great Hans Lollik.

2.32 <u>Holder or Claimholder</u>:  Any entity that is the holder of a claim, including but not limited to (a) a claim that arose on or before the Petition Date, (b) a claim against Debtors' Estates of any kind specified in § 502(g), § 502(h) or § 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.33 <u>Impaired</u>:  When used with respect to any claim, interest or class, it has the same meaning as that contained in § 1124 of the Bankruptcy Code.

2.34 <u>Liberty</u>:  Liberty Bankers Life Insurance Company, as successor-in-interest to American Reserve Life Insurance Company.

2.35 <u>Little Hans Loan</u>:  The loan dated approximately September 17, 2004 between Little Hans LLLP and Liberty in the principal amount of $1,650,000, as modified on or about

September 30, 2007, October 31, 2007 and December 1, 2008, evidenced by, *inter alia*, the Loan Agreement, Promissory Note, Mortgage, Security Agreements, Loan Modification Agreement, Modification of Mortgage and Second Modification Agreement (increasing principal amount to $2,310,000), Limited Guaranty, Pledge and Security Agreement with Assignment of Rights, Modification of Mortgage and Third Modification Agreement and all other loan documents.

2.36    Little Hans LLP:  Little Hans Lollik Holdings, LLP.

2.37    Little Hans Property:  The undeveloped 100-acre island located approximately one and one-half mile north of St. Thomas, USVI known as Little Hans Lollik.

2.38    Order:  An order or judgment of the Bankruptcy Court as entered on the docket.

2.39    Petition Date:  The date on which Debtors' Petition was filed: PRM Development and EMI – August 6, 2010, Great Hans LLLP and Little Hans LLP – September 3, 2010.

2.40    Priority Claims:    Allowed Claim entitled to a priority under, *inter alia*, Bankruptcy Code § 507(a).

2.41    PRM Development:  PRM Development, LLC.

2.42    Pro Rata:  Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Allowed Interest to the amount of the Allowed Claim or Allowed Interest is the same as the ratio of the amount of consideration distributed on account of All Allowed Claims and Allowed Interests of the class in which the particular Allowed Claim or Allowed Interest is included in the amount of All Allowed Claims and Allowed Interests of that Class.

2.43    Professional Person:  Any entity retained or to be compensated pursuant to §§ 326, 327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code.

2.44    Reorganized Debtors:    The legal entity that shall survive Debtors as of the Confirmation Date.

2.45    Plan:  The Plan proposed by Debtors, either in its present form or as it may be amended or modified.

2.46    Secured Claim:  A claim of a creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under § 553 of the Bankruptcy Code, in each case to the extent of the value of said creditor's interest in Debtors' interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a secured creditor from making the election provided in § 1111(b)(2) of the Bankruptcy Code.

2.47    Secured Creditor:  Any Creditor that is the holder of a Secured Claim.

2.48  <u>Tax Claim</u>:  Any claim that is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

2.49  <u>Undetermined Claim</u>:  A claim that is (a) a Disputed Claim; (b) a claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined administrative claim in respect of an application of a professional person; or (d) a claim that is unliquidated or contingent.

2.50  <u>Unsecured Claim</u>:  Any claim against Debtors whatsoever, other than 1) a Secured Claim, or 2) a Claim that is not entitled to priority pursuant to the Bankruptcy Code.

2.51  <u>USVI</u>: United States Virgin Islands.

2.52  <u>Wikil Property</u>:  Residential property located at 142 Wikil Place, Palm Desert, California.

2.53  <u>Winnfield</u>:  Winnfield Life Insurance Company.

## ARTICLE III
## <u>DESIGNATION OF CLASSES OF CLAIMS</u>

3.1  <u>Designation of Classes of Claims</u>:  The following is a designation of the Classes of Claims under this Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

Class 1:  Allowed Administrative Claims

Class 2:  Allowed Tax Priority Claims

Class 3A and 3B:  Secured Claims of Liberty

Class 4: Secured Claim of Winnfield

Class 5: Secured Claim of Foley & Lardner

Class 6: PRM Development General Unsecured Claims

Class 7: EMI General Unsecured Claims

Class 8: Great Hans LLP General Unsecured Claims

Class 9: Little Hans LLP General Unsecured Claims

Class 10:  Equity Interests

# ARTICLE IV
## PAYMENT OF ADMINISTRATIVE CLAIMS
## AND EXPENSES AND CERTAIN PRIORITY CLAIMS

4.1 <u>Administrative Claims</u>: (Class 1) – Except to the extent that the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims that are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan.  Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash on or before ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.  For purposes of payment of Administrative Claims, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan or such Claimant shall be barred from asserting an Administrative Claim.

4.2 <u>Priority Tax Claims</u>: (Class 2) - Priority Tax Claims shall be paid by the Reorganized Debtors, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on October 1, January 1, April 1 and July 1 of each year over a period not exceeding five (5) years after the date of assessment of the Claims, as provided in § 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date.

# ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1 <u>Secured Claims of Liberty</u>: (Class 3) - The Class 3 Claim of Liberty shall be treated as a fully Secured Claim in an amount to be determined by the Bankruptcy Court pursuant to 11 U.S.C. § 506(b) at the Confirmation Hearing.  The Class 3 Claim of Liberty shall be treated as follows:

(a)     <u>Class 3A</u>: This Class consists of the Secured Claim of Liberty in the principal amount of $4,690,000 which is secured by a first lien on the Great Hans Property.  Allowed Secured Claims in Class 3A will receive the following treatment:

(i)     <u>Assumption of Great Hans Loan</u>.  Great Hans LLLP shall assume the Great Hans Loan with no assumption fee, subject to the following modifications:  1) the maturity date shall be extended to November 1, 2012 ("Initial Term") with an option to extend the maturity for six (6) months on the same terms as the Initial Term; 2) the interest rate shall be reduced to 10.0%, with 7.5% to be paid on a current basis and 2.5% to accrue on a simple, non-compounded basis and be paid at maturity; 3) interest only payments will be made monthly by the Debtors; and 4) all amounts owed will be deaccelerated.

(ii) <u>Extension of Great Hans Loan</u>.  In the event that the Little Hans Property is sold during the Initial Term of the Great Hans Loan, the term of the Great Hans Loan will be extended until November 1, 2013 on the same terms as during the Initial Term.  Furthermore, Great Hans LLLP may extend the term of the Great Hans Loan for a period of twelve (12) months in exchange for payment of a one percent (1%) exit fee at maturity of the Great Hans Loan, provided that the Great Hans Loan is not in default, and notice is sent in writing to Liberty within one hundred twenty (120) days of the maturity of the Initial Term.

(iii) <u>Application of the Great Hans Property Proceeds</u>.  In the event the Great Hans Property is sold, the Great Hans Loan will be paid in full and the remaining proceeds will be distributed, first, to the Allowed Class 7 General Unsecured Claims, and, second, to Great Hans LLP for distribution to PRM Development and EMI and their respective, Class 6 and Class 7 General Unsecured Claims.

(iv) <u>Defaults</u>.  All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

(v) <u>Default Interest/Penalties/Charges</u>.  Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to Liberty in connection with Great Hans LLLP's assumption of the Great Hans Loan, or the treatment provided under this Plan for Allowed Class 3A Claims.

(vi) <u>Collateral</u>.  Liberty shall retain all of its liens and security interests in the Debtors' assets, including the Great Hans Property, granted to it pursuant to the Great Hans Loan, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date.

(vii) <u>Waivers/Consents</u>.  Liberty shall be deemed to consent to and approve the transactions and changes to the Debtors contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

The Class 3A Claim is impaired under the Plan.

(b) <u>Class 3B</u>:    This Class consists of the Secured Claim of Liberty in the principal amount of $2,310,000 which is secured by a first lien on the Little Hans Property. Allowed Secured Claims in Class 3B will receive the following treatment:

(i) <u>Assumption of Little Hans Loan</u>.  Little Hans LLP shall assume the Little Hans Loan with no assumption fee, subject to the following modifications:  1) the

maturity date shall be extended to November 1, 2012 with an option to extend the maturity for six (6) months on the same terms as the Initial Term; 2) the interest rate shall be reduced to 10.0%, with 7.5% to be paid on a current basis and 2.5% to accrue on a simple, non-compounded basis and be paid at maturity; 3) interest only payments will be made monthly by the Debtors; and 4) all amounts owed will be deaccelerated.

(ii)     Extension of Little Hans Loan.     Furthermore, Little Hans LLP may extend the term of the Little Hans Loan for a period of twelve (12) months in exchange for payment of a one percent (1%) exit fee at maturity of the Little Hans Loan, provided that the Little Hans Loan is not in default, and notice is sent in writing to Liberty within one hundred twenty (120) days of the maturity of the Initial Term.

(iii)     Application of the Little Hans Property Proceeds.  In the event the Little Hans Property is sold, the Little Hans Loan will be paid in full and the remaining proceeds will be distributed, first, to the Allowed Class 9 General Unsecured Claims, and, second, to Little Hans LLP for distribution to PRM Development and EMI and their respective, Class 6 and Class 7 General Unsecured Claims.

(iv)     Defaults.  All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

(v)     Default Interest/Penalties/Charges.  Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to Liberty in connection with Little Hans LLP's assumption of the Little Hans Loan, or the treatment provided under this Plan for Allowed Class 3B Claims.

(vi)     Collateral.  Liberty shall retain all of its liens and security interests in the Debtors' assets, including the Little Hans Property, granted to it pursuant to the Little Hans Loan, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date.

(vii)     Waivers/Consents.  Liberty shall be deemed to consent to and approve the transactions and changes to the Debtors contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

The Class 3B Claim is impaired under the Plan.

5.2     Secured Claim of Winnfield: (Class 4) - The Class 4 Claim of Winnfield shall be treated as follows:  On December 1, 2010, the Wikil Property reverted to Winnfield pursuant to a non-judicial foreclosure in the State of California. Winnfield, the titleholder of the Wikil Property, has assumed an *in rem* obligation with respect to outstanding *ad valorem* taxes on

account of the Wikil Property.  To the extent the Winnfield claim is Allowed, the Winnfield claim will be paid *pro rata* with the Class 7 General Unsecured Claims out of cash distributions payable to the Reorganized EMI as a result of the sale of the Little Hans Property and the Great Hans Property.

The Class 4 Claim is impaired under the Plan.

5.3    Secured Claim of Foley & Lardner: (Class 5) - This Class consists of the Secured Claim of Foley & Lardner in the principal amount of $345,461.37 which is secured by a perfected security interest in the proceeds receivable by PRM Development from its ownership interests in Great Hans LLLP and Little Hans LLP.  The full amount of Foley & Lardner's claim shall be Allowed.  Allowed Secured Claims in Class 5 will receive the following treatment:

(a)    Upon the sale of either the Great Hans Property or the Little Hans Property, whichever occurs first, Foley & Lardner will receive up to eight percent (80%) of its Allowed Claim out of cash distributions payable to the Reorganized PRM Development, prior to payment of any Class 6 Claims.

(b)    If any such cash distributions remain after all Class 6 Claims have been paid as required, any such remaining cash distributions shall be applied to the remaining balance of Foley & Lardner's Class 5 Allowed Claim.

(c)    If any balance remains unpaid on Foley & Lardner's Allowed Claim after the payments specified in paragraphs (a) and (b), such balance shall be paid out of cash distributions payable to the Reorganized PRM Development out of the sale of the other Property, prior to payment of any Class 6 Claims out of such cash distributions.

The Class 5 Claim is impaired under the Plan.

5.4    PRM Development General Unsecured Claims: (Class 6) – This Class consists of any Allowed General Unsecured Claims against PRM Development.  Creditors holding Allowed Class 6 General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized PRM Development up to the Allowed amount of their Claim as a result of the sale of the Little Hans Property and the Great Hans Property.

The Class 6 Claims are impaired under the Plan.

5.5    EMI General Unsecured Claims:  (Class 7) – This Class consists of any Allowed General Unsecured Claims against EMI.  Creditors holding Allowed Class 7 General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized EMI up to the Allowed amount of their Claim as a result of the sale of the Little Hans Property and the Great Hans Property.

The Class 7 Claims are impaired under the Plan.

5.6     Great Hans LLP General Unsecured Claims:  (Class 8) – This Class consists of any Allowed General Unsecured Claims against Great Hans LLLP.  Creditors holding Allowed Class 8 General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized Great Hans LLLP up to the Allowed amount of their Claim as a result of the sale of the Great Hans Property.

The Class 8 Claims are impaired under the Plan.

5.7     Little Hans LLP General Unsecured Claims:  (Class 9) – This Class consists of any Allowed General Unsecured Claims against Little Hans LLP.  Creditors holding Allowed Class 9 General Unsecured Claims shall receive payment of their Allowed Claims out of cash distributions payable to the Reorganized Little Hans LLP up to the Allowed amount of their Claim as a result of the sale of the Little Hans Property.

The Class 9 Claims are impaired under the Plan.

5.8     Equity Interest Holders: (Class 10) – Class 10 Equity Interest Holders, comprised of member interest owners in PRM Development, EMI, Great Hans LLLP and Little Hans LLP, shall retain their interests in PRM Development, EMI, Great Hans LLLP and Little Hans LLP.

Class 10 Claims are impaired under the Plan.

5.9     Payments to the United States Trustee:  The Reorganized Debtors shall pay all quarterly fees of the United States Trustee until the Case is closed.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

6.1     Marketing of the Property

(a)     Debtors intend employ William Otto of David Jones Real Estate in St. Thomas, USVI to market and sell the Great Hans Property and Little Hans Property on the following terms:

(i)     Upon closing of a sale of the Great Hans Property and/or the Little Hans Property, Mr. Otto will be paid a commission of 5% of the sales price, less customary closing costs;

(ii)     Mr. Otto will be the listing agent and required accept co-brokers put forward by any of the Debtors;

(iii)     Co-brokers will be paid negotiated commissions for a completed sale but in no event more than 50% of the total commission;

(iv)     The Great Hans Property and Little Hans Property will continue to be listed on the Private Islands Online website, ;

(b)     The Court has required the Debtors to disclose that Liberty believes that the value of the Big Hans and Little Hans properties does not exceed the amount of its claims and that sales in the future will not generate a sufficiently higher price to offset the continuing debt accrual on Liberty's claims.

6.2     PRM Development

(a)     <u>Sale of the Great Hans Property and Little Hans Property</u>.     The Reorganized PRM Development shall assist in the sale of the Great Hans Property and Little Hans Property.

(b)     <u>Reorganized Debtor</u>.     Upon the Confirmation Date of the Plan, the Reorganized PRM Development shall be the survivor of PRM Development.

(c)     <u>Plan Funding</u>.     Non-debtor affiliates of PRM Development have committed to fund all payments required to be made by PRM Development under the Plan.  The non-debtor affiliates have sufficient funds on hand to make these payments during the term of the Plan and are controlled by Peter Morris.

(d)     <u>Cramdown</u>.     If any impaired class votes to accept the plan, but not all classes accept the plan, PRM Development will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

6.3     EMI

(a)     <u>Sale of the Great Hans Property and Little Hans Property</u>.     The Reorganized EMI shall assist in the sale of the Great Hans Property and Little Hans Property.

(b)     <u>Sale of 11-59 Estate Peterborg</u>.  The parcel of real property located at 11-59 Estate of Peterborg, No. 12 Great Northside Quarter, St. Thomas, USVI ("11-59 Property"), was pledged as collateral for the Great Hans Loan and Little Hans Loan.  Reardon Capital, LLC, an affiliate of EMI and owner of the 11-59 Property, may list the 11-59 Property for sale within (15) days of the Effective Date provided that Liberty agrees that all net proceeds from the sale of the 11-59 Property will be placed in an escrow account and serve as an interest reserve to be used solely by Debtors' to pay interest on the Great Hans Loan and Little Hans Loan.

(c)     <u>Reorganized Debtor</u>.     Upon the Confirmation Date of the Plan, the Reorganized EMI shall be the survivor of EMI.

(d)     <u>Plan Funding</u>.     On March 3, 2011, Tizes and Rick Blumberg, an equity owner of EMI ("Blumberg"), entered into the EMI Reorganization Funding Agreement (the "EMI Funding Agreement") whereby Blumberg has agreed to, among other things, provide EMI with monthly "New Capital" payments of $29,170.00 (USD) for payment of EMI's proportionate share of monthly adequate protection payments to Liberty.  The payments shall commence in March 2011 and continue under the Plan, as proposed and confirmed on a joint basis by the

Debtors, for a period of not less than eighteen (18) months. All EMI management decisions shall be require the equal, mutual and contemporaneous consent of both Tizes and Blumberg, subject to the approval of the Court if required. As of the date of the EMI Funding Agreement, Blumberg shall perform all administrative functions and tasks associated with the EMI Bankruptcy Case. EMI intends to notify the Court of the terms of the EMI Funding Agreement on an *in camera* basis.

(e) <u>Cash Bond</u>. The cash bond held by the United States District Court for the Northern District of Texas pursuant to its Order in the amount of $57,500.00 will be released and remitted to Liberty for application to payment of monthly interest by EMI for the first month following the Effective Date and the remainder to the payment of monthly interest by EMI for the second month following the Effective Date.

(f) <u>Cramdown</u>. If any impaired class votes to accept the plan, but not all classes accept the plan, EMI will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

6.4 Great Hans LLLP

(a) <u>Initial Sales Price of Great Hans Property</u>. The Reorganized Debtors will offer the Great Hans Property, including the equity ownership of Great Hans LLP, for sale with a licensed broker at a price of not more than $29,000,000 beginning within thirty (30) days following the Effective Date. Debtors will the modify the Great Hans Property asking price as commercially reasonable under then existing circumstances, or by voluntary agreement with Liberty, the same to be evaluated every six (6) months.

(b) <u>Mandatory Acceptance Price</u>. Debtors shall accept any bona fide offers for the purchase of the Great Hans Property, after a reasonable negotiation period, at a price to be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement.

(c) <u>Court Determination of Offers</u>. Debtors shall submit to the Court any bona fide offers received for the purchase of the Great Hans Property, after a reasonable negotiation period, at a price to be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement. The Court will have discretion to determine whether the Debtors shall accept such offer based factors including the length of time that the Great Hans Property has been on the market, the balance of harms to the Debtors and Liberty, the benefit to the Estates of the Debtors, and the financial wherewithal of the Debtors in further compliance with the terms of the Plan.

(d) <u>Sale Term</u>. The Great Hans Property will have a sale closing deadline that will be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement ("Great Hans Closing Deadline"). The Great Hans Closing Deadline shall be the deadline for the closing of a sale of the Great Hans Property, after which date the Great Hans Property will be put to auction at time and place to be agreed by the Debtors and Liberty. At such auction Liberty has the right to make a credit bid for the Great Hans Property.

(e)    Real Estate Taxes.  All *ad valorem* property taxes imposed against the Great Hans Property by the United States Virgin Islands or any other taxing authority following Confirmation of the Plan will be paid as required by the applicable taxing authority.

(f)    Reorganized Debtor.  Upon the Confirmation Date of the Plan, the Reorganized Great Hans LLLP shall be the survivor of Great Hans LLLP.

(g)    Plan Funding.  PRM Development and EMI shall make all payments required under the Plan as discussed above.

(h)    Cramdown.  If any impaired class votes to accept the plan, but not all classes accept the plan, Great Hans LLLP will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

6.5    Little Hans LLP

(a)    Sale of Little Hans Property.  The Reorganized Debtors will offer the Little Hans Property, including the equity ownership of Little Hans LLP, for sale with a licensed broker at a price of not more than $7,500,000 beginning within thirty (30) days following the Effective Date.  The Little Hans Property will have a sale closing deadline that will be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement ("Little Hans Closing Deadline").  Debtors will the modify the Little Hans Property asking price as commercially reasonable under then existing circumstances, or by voluntary agreement with Liberty, the same to be evaluated every six (6) months.

(b)    Mandatory Acceptance Price.  Debtors shall accept any bona fide offers for the purchase of the Little Hans Property, after a reasonable negotiation period, at a price to be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement.

(c)    Court Determination of Offers.    Debtors shall submit to the Court any bona fide offers received for the purchase of the Little Hans Property, after a reasonable negotiation period, at a price to be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement.  The Court will have discretion to determine whether the Debtors shall accept such offer based factors including the length of time that the Little Hans Property has been on the market, the balance of harms to the Debtors and Liberty, the benefit to the Estates of the Debtors, and the financial wherewithal of the Debtors in further compliance with the terms of the Plan.

(d)    Sale Term.    The Little Hans Property will have a sale closing deadline that will be submitted to the Court *in camera* and submitted to Liberty subject to a confidentiality agreement ("Little Hans Closing Deadline").  The Little Hans Closing Deadline shall be the deadline for the closing of a sale of the Little Hans Property, after which date the Little Hans Property will be put to auction at time and place to be agreed by the Debtors and Liberty.  At such auction Liberty has the right to make a credit bid for the Little Hans Property.

(e) <u>Real Estate Taxes</u>. All *ad valorem* property taxes imposed against the Little Hans Property by the United States Virgin Islands or any other taxing authority following Confirmation of the Plan will be paid as required by the applicable taxing authority.

(f) <u>Reorganized Debtor</u>. Upon the Confirmation Date of the Plan, the Reorganized Little Hans LLP shall be the survivor of Little Hans LLP.

(g) <u>Plan Funding</u>. PRM Development and EMI shall make all payments required under the Plan as discussed above.

(h) <u>Cramdown</u>. If any impaired class votes to accept the plan, but not all classes accept the plan, Little Hans LLP will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

**ARTICLE VII**
**PROVISIONS FOR THE REJECTION OF**
<u>**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**</u>

7.1 <u>General Assumption of Executory Contracts</u>: All executory contracts and unexpired leases of Debtors (including, but not limited to, those listed on Debtors' Schedules) which are not expressly rejected on or before 90 days after the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date. The Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to § 365 of the Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by Debtors or Debtors-in-Possession that such contract or lease is an executory contract or unexpired lease or that Debtors or Debtors-in-Possession has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption under § 365 of the Bankruptcy Code as of the Effective Date. The Reorganized Debtors shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following confirmation of this Plan.

7.2 <u>Cure of Defaults</u>: The Reorganized Debtors shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of §§ 1123(a)(5)(G) and 365 (b) of the Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtors may pay such amount as may be agreed upon between the Reorganized Debtors and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if, the Reorganized Debtors file, within sixty (60) days of the filing of an Assumption Proof of Claim, an objection in writing to

the amount set forth, the Court shall determine the amount actually due and owing in respect of the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtors on the later of: (1) ten (10) Business Days after the expiration of the sixty (60) day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

7.3     Claims for Damages:  Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtors such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 6, 7, 8 or 9 claims, as applicable. Any claim not filed within such time will be forever barred from assertion against Debtors or their Estates.

7.4     Reservation of Rights:  Debtors reserve the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to 90 days after the Confirmation Date.

7.5     Proofs of Claims:  Each entity that is a party to an executory contract or unexpired lease rejected at Confirmation, and only such entity, shall be entitled to file, not later than thirty (30) days after the Confirmation Date or such later date specified by the Court in the Confirmation Order or in an Order approving such rejection, a proof of claim for damages alleged to have arisen from the rejection of the contract or lease to which such entity is a party.

## ARTICLE VIII
## MODIFICATION OF THE PLAN

8.1     Amendments Prior to Confirmation Date:  Debtors may modify the Plan prior to Confirmation, and the Plan, as amended shall become the new Plan of Reorganization.

8.2     Amendments After Confirmation Date:  Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

8.3     Effect on Claims:  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE IX
## RETENTION OF JURISDICTION

9.1     Purposes:  Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Cases for the following purposes:

i.    to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with § 503(b) of the Bankruptcy Code or this Plan;

iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv.    to hear and determine any and all actions initiated by the Reorganized Debtors, whether by motion, complaint or otherwise;

v.    to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.    to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii.    to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii.    to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

ix.    to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect Debtors from creditor actions;

x.   to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code and/or applicable bankruptcy law and/or applicable bankruptcy law;

xi.   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii.   to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

xiii.   to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

xiv.   to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv.   to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi.   to enter a Final Order and final decree closing the Chapter 11 Cases.

9.2     Exclusive Jurisdiction:  The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

9.3     Abstention:  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including the matters set forth in this Article IX, this Article IX shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

9.4     Closing of Case:  The Reorganized Debtors shall file an application for final decree and to close the Chapter 11 Cases and promptly set a hearing no later than twelve (12) months after the Effective Date, or show cause to the Court within such period why the Court should not enter a final decree.  Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Chapter 11 Cases, and jurisdiction shall be retained over such proceeding.

**ARTICLE X**
**CAUSES OF ACTION**

10.1    Retention of Causes of Action:   All Claims and Causes of Action owned by Debtors, Causes of Action that could have been brought by a Creditor on behalf of Debtors, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan may be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code.  The Reorganized Debtors shall have the exclusive right to settle or compromise all such Causes of Action subject to Court approval.   Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

10.2    Debtors have not yet concluded their analysis of existing claims and Causes of Action and expressly reserve the right to continue such analysis.  All Claims and Causes of Action owned by Debtors, Causes of Action that could have been brought by a Creditor on behalf of Debtors, and all Causes of Action created by the Bankruptcy Code not expressly waived or released under the Plan may be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code.   The Reorganized Debtors shall have the exclusive right to settle or compromise all such Causes of Action subject to Bankruptcy Court approval. Bankruptcy Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

(a)    EMI Reserved Claims Regarding the Wikil Property.  EMI submits that it has calculable damages against Winnfield for the wrongful foreclosure of the Wikil Property.

(i)    On or about January 25, 2008, EMI's principal shareholder Tizes executed a Promissory Note in favor of Winnfield in the principal amount of $975,000.00 (Promissory Note dated January 25, 2008). The Wikil Loan was used to purchase a single-family residential property located at 142 Wikil Place, Palm Desert, California (the "Wikil Property").

(ii)    The Promissory note was secured by a Deed of Trust on the Wikil Property.   On or about July 25, 2009, the Parties agreed to modify and extend the Wikil Loan pursuant to terms later memorialized in the "First Modification Agreement." Beginning in January 2010 Winnfield and Tizes entered into negotiations to modify the Wikil Loan a second time (the "Modified Offer"). Accordingly, on or about February 19, 2010, Winnfield formally offered to modify the Wikil Loan on terms set forth in an email from A. Scharton, Premier's agent, to Tizes.    Among those terms was a condition precedent that the "January 1, 2010, February 1, 2010 and March 1, 2010 full interest payments shall be due at the time of extension."

(iii)    On March 5, 2010, the Lender changed one of the terms of the Modified Offer and reiterated that the Lender "must receive . . . wired funds for the January – March, 2010 payments no later than Wednesday, March 10, 2010, in order for the extension offer to be honored."  Tizes expressly agreed to the Modified Offer.  On March 10, 2010, Tizes wire transferred $26,105.23 (the amount of the January-March, 2010 payments) to the Lender.  Tizes provided contemporaneous proof to Winnfield that the $26,105.23 fee was paid.

(iv)    On March 17, 2010, Tizes received a document entitled Second Modification Agreement purporting to be a codification of the Second Loan Modification Agreement.  The purported codification did not correctly conform to the terms of the Second Loan Modification, and Tizes asked that the document be revised.  Subsequently, Tizes requests were refused.    Winnfield unilaterally repudiated the modification agreement, and took and continued aggressive action in respect of other business matters.  On or about 21 April 2010, Winnfield commenced non-judicial foreclosure proceedings against the Wikil Property in the County of Riverside, California, by filing a "Notice of Default" and hired the First American Title Insurance Company as Trustee to dispose of the Wikil property.  On or about 5 August 2010, Tizes conveyed fee simple title to the Wikil Property to EMI.   On December 1, 2010, the Wikil Property "reverted" to Winnfield pursuant to a non-judicial foreclosure.

(v)    In light of the foregoing facts regarding the Wikil Property, Debtor EMI shall hereby retain its claims and causes of action against Winnfield and any of its principals and/or affiliates, including but not limited to claims for: fraud, misrepresentation, breach of contract, tortuous interference, wrongful foreclosure, unjust enrichment, and rights of redemption pursuant to the California Property Code.

(b)    EMI Reserved Claims Regarding the Great Hans and Little Hans Loans.  EMI submits that it has calculable damages against Winnfield and Liberty for wrongfully instituting its lift stay motion against EMI.   Accordingly, Debtor's claims and causes of action also include tortious interference of contract, breach of contract, misrepresentation, and violations of the Texas Securities Act.

(c)    Debtors Reserved Claims Regarding Great Hans and Little Hans Loans.  Debtors' are investigating, and expressly reserve their rights in connection therewith, the following claims against Liberty and its affiliates: fraud, failure to register, breach of fiduciary duty, fraud in the sale of securities, wrongful foreclosure of security interest, wrongful attempted foreclosure, replevin, negligent misrepresentation, promissory estoppel, commercial bad faith, deepening insolvency, rescission, unjust enrichment, breach of contract, indemnification.

## ARTICLE XI
## RESOLUTION OF UNDETERMINED CLAIMS

11.1    <u>Procedure</u>:  Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtors may file with the Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or Interest to which such objection pertains.  Unless otherwise ordered by the Court, the Reorganized Debtors shall litigate to judgment, settle or withdraw objections to contested claims.

11.2    <u>Allowance of Claims</u>:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this

Plan and the terms of any Final Order of the Court with respect to such Allowed Claim. In the event that Debtors make any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

11.3    <u>Rights of Creditors</u>:    Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held or reserved by the Reorganized Debtors with respect to such claim.

**ARTICLE XII**
**<u>GENERAL PROVISIONS</u>**

12.1    <u>Certain Rights Unaffected</u>:    Except as otherwise provided herein, any rights or obligations which Debtors' creditors may have among themselves as to their respective claims or the relative priority or subordination thereof.

12.2    <u>Headings</u>:    The article and section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affects the terms, provisions or interpretations of this Plan.

12.3    <u>Severability</u>:    Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.4    <u>Governing Law</u>:    Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5    <u>Successors and Assigns</u>:    The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.6    <u>Discharge of Claims</u>:    Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against Debtors and the Reorganized Debtors or any of its assets or properties to the extent permitted by § 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against Debtors and the Reorganized Debtors shall be, and shall be deemed to be discharged; and all holders of Claims shall be precluded from asserting against the Reorganized Debtors or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

12.7    Discharge of Debtors:    Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against Debtors or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, Debtors shall be deemed discharged and released to the extent permitted by § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of Debtors.  Except as provided herein, pursuant to § 524 of the Bankruptcy Code, such discharge shall void any judgment against Debtors at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against Debtors or the property of Debtors, to the extent it relates to a claim discharged.

12.8    Exculpations:  Debtors' professionals shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

12.9    Injunctive Relief:  Except as provided herein, on and after the Confirmation Date, all creditors and persons acting in concert with them are enjoined and restrained pursuant to § 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtors in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

12.10   Temporary Injunction. Upon Confirmation of the Plan, Liberty and Winnfield shall be temporarily enjoined, pursuant to § 105 of the Bankruptcy Code, from proceeding against any member, affiliate, guarantor, pledgor or other responsible person related to the Debtors and the Debtors' Bankruptcy Estates, including, but not limited to, Tizes, Reardon Capital, LLC, Richard P. Blumberg, and Roark Architecture, L.P., for the collection of all or any portion of their Allowed Claim or guarantee thereof.  Said injunction shall remain in effect only for so long as the Debtors comply with the applicable terms and obligations of the Plan. Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtors of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party. By this section creditors are temporarily enjoined hereunder from proceeding against the Debtors or their affiliates and any such claims or cause of action shall be abated in lieu of collection of any amounts paid or to be paid by the Debtors under the Plan as well so as to not inhibit or impair ability to perform obligations under the Plan as members or affiliates of the Debtors to make the necessary payments due to the Debtors under the Plan.

Dated:  April 20, 2011.

**PRM Development, LLC**

By:     PRM Management of Illinois, Inc.,
        Its Manager

        By:     */s/ Peter R. Morris*
                Peter R. Morris, President

**Econometrics Management, Inc.**

By:     */s/ Bruce R. Tizes*
        Bruce R. Tizes, President

**Hans Lollick Land Company, LLLP**

By:     PRM Development, LLC,
        Its General Partner

        By:     PRM Management of Illinois,
                Inc., Its Manager

                By:     */s/ Peter R. Morris*
                        Peter R. Morris,
                        President

By:     Econometrics Management, Inc.,
        Its General Partner

        By:     */s/ Bruce R. Tizes*
                Bruce R. Tizes, President

**Little Hans Lollick Holdings, LLP**

By:     PRM Development, LLC,
        Its Partner

        By:     PRM Management of Illinois,
                Inc., Its Manager

                By:     */s/ Peter R. Morris*
                        Peter R. Morris,
                        President

By:     Econometrics Management, Inc.,
        Its Partner

By:    */s/ Bruce R. Tizes*
Bruce R. Tizes, President

Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR PRM DEVELOPMENT, LLC,
HANS LOLLICK LAND COMPANY, LLLP, AND LITTLE
HANS LOLLIK HOLDINGS, LLP**

Julie Ann Linares
THE LINARES LAW FIRM, P.L.L.C
2199 Turtle Creek Blvd., Suite 300
Dallas, TX 75219
(214) 523-9006 – Telephone
(214) 614-9162 – Telecopier
Email: jlinares@linareslawfirm.com

**COUNSEL FOR ECONOMETRIC MANAGEMENT, INC.**